10452-12
KEF BMS

FILED
Effingham Co. Circuit Court
4th Judicial Circuit
Date: 3/25/2021 11:13 AM
John Niemerg

10452-12
KEF/BJV/tlp

## IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
## EFFINGHAM COUNTY, ILLINOIS

| | | |
|---|---|---|
| Thad F. Brockett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.:   15 L 52 |
| | ) | |
| The County of Effingham, Illinois, a body | ) | |
| politic and corporate, and Jim Niemann, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT THEIR

### MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, THE COUNTY OF EFFINGHAM, ILLINOIS and JIM NIEMANN,

by HEYL, ROYSTER, VOELKER & ALLEN, their attorneys, and state as follows:

### I.     Introduction

*Preliminarily, Defendants acknowledge that discovery in this wrongful-discharge action has not yet closed. Nonetheless, for the reasons stated below, Defendants believe that two legal issues — specifically, whether any Defendant was Plaintiff's "employer," and whether legislative immunity applies — can dispose of the instant litigation now, and on the basis of a handful of facts that cannot be disputed. Defendants respectfully request that this Court rule on these legal issues before the parties expend additional resources and time on a case that has been on this Court's docket since December of 2015.*

Plaintiff Thad Brockett is a former "Operations Sergeant" and employee of the Effingham

County Sheriff's Office, which is not a defendant to this litigation.  On December 15, 2014,

Defendant Effingham County (through its Board, chaired by Defendant Jim Niemann) passed its

budget for fiscal year 2015. In this budget, the County decided to eliminate funding for the

Operations Sergeant position — one of a handful of positions at the Sheriff's Office that went

unfunded. Due to the lack of funding, the Sheriff's Office parted ways with Plaintiff on December

16, 2014.

EXHIBIT
5

The instant lawsuit followed. To Plaintiff, the Effingham County Board and Jim Niemann eliminated funding for his job title in retaliation for Plaintiff's investigation into potential criminal misconduct by two fellow Sheriff's Office employees, and/or in retaliation for Plaintiff's political support for the previous Sheriff of Effingham County. (Cmplt. Count I, ¶ 17; Count II, ¶¶ 10, 15–16). Thus, per Plaintiff, the Defendants are liable for common-law retaliatory discharge (Count I), and for violating Section 15(b) of Illinois' Whistleblower Act (Count II). Plaintiff also originally included a Count III, listing various respondents in discovery — including the Sheriff of Effingham County, David Mahon. Those respondents in discovery have now been terminated from the case. Since this lawsuit was filed over five years ago, the parties have exchanged written discovery, and taken a limited deposition of the Effingham County Sheriff.

Defendants believe Plaintiff has two fundamental issues with his lawsuit:

First, Plaintiff did not sue his employer, and only an employer can be liable under the Whistleblower Act or for a retaliatory discharge tort. As a matter of Illinois law, Plaintiff's employer was the Effingham County *Sheriff's Office* — not Effingham County or its county board chair, Jim Niemann.

Second, the Defendants' alleged misconduct is protected by an absolute legislative immunity. After all, Plaintiff faults the Defendants for passing a budget that happened to eliminate funding for Plaintiff's position at the Sheriff's Office. But passing a budget is the quintessential legislative function, and therefore Sections 2-103 and 2-205 of the Tort Immunity Act defeat Plaintiff's claims.

2

## II.    Exhibit List

| | | |
|---|---|---|
| Ex. A | | Defendants' Second Amended Answer and Affirmative Defenses to Plaintiff's Complaint |
| Ex. B | | Affidavit of Jim Niemann |
| | Ex. 1 | Ordinance No. 14-96 (adopting FY 2015 budget) |
| | Ex. 2 | FY 2015 Budget Excerpt: Sheriff's Office |
| Ex. C | | Plaintiff's Answers to Interrogatories |
| Ex. D | | Deposition of Sheriff David Mahon |
| | Ex. 1 | Plaintiff's Termination Letter |

## III.    Undisputed Material Facts

### A. The Parties

1.      Plaintiff Thad Brockett was an employee of the Effingham County Sheriff's Department until December 16, 2014. (Ex. A, Def's Answer, ¶3).

2.      From fall of 2012 until December 16, 2016, Plaintiff held the position of "Operations Sergeant" with the Effingham County Sheriff's Office. (Ex. A, Def's Answer, ¶4); (Ex. C, Interrog. Ans. No. 8).

3.      Defendant Effingham County is a body politic and corporate organized and existing by virtue of the laws of the State of Illinois. (Ex. A, Def's Answer, ¶1).

4.      Defendant Jim Niemann was the Chairman of the Effingham County Board in in 2014. (Ex. A, Def's Answer, ¶2).

5.      The Effingham County Board is the legislative component/actor of Effingham County. (Ex. B, Aff. of J. Niemann, ¶2).

3

**B. The relationship between the Effingham County Sheriff's Office, and Defendant Effingham County**

6.      Every year, the Effingham County is required to pass a budget for funding the operations of, among other things, the Effingham County Sheriff's Office ("Sheriff's Office"). (Ex. B, Aff. of J. Niemann, ¶3).

7.      Effingham County does not have the ability to hire, fire, discipline, promote, demote, train, schedule, or equip employees of the Sheriff's Office. (Ex. B, Aff. of J. Niemann, ¶9). Those decisions and/or issues are the prerogative of the Effingham County Sheriff him- or herself. (Ex. B, Aff. of J. Niemann, ¶¶9–10).

8.      Effingham County did not have a Sheriff's Merit Review Commission in 2014. (Ex. B, Aff. of J. Niemann, ¶12).

9.      Effingham County is not the employer of individuals employed by the Effingham County Sheriff's Office. (Ex. B, Aff. of J. Niemann, ¶¶ 9–10).

**C. The 2015 budget for Effingham County**

10.      On December 15, 2014, Effingham County passed by vote of its County Board a budget for fiscal year 2015, which started December 1, 2014 and ended November 30, 2015. (Ex. B, Aff. of J. Niemann, ¶ 4 & Ex. 1 thereto).

11.      As part of this budget, Effingham County decided to eliminate funding for the Operations Sergeant position. (Ex. B, Aff. of J. Niemann, ¶¶ 6–8 & Ex. 2 thereto) (not listing funding next to "Operations Sergeant" and a handful of other positions).

**D. The Subject Incident**

12.      On December 16, 2016, Plaintiff's employment with the Effingham County Sheriff's Office came to end, as a result of the funding for Plaintiff's "operations sergeant"

4

position being eliminated from the County budget. (Ex. D, Dep. of D. Mahon, 6–8 & Ex. 1 thereto).

## IV.   Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c). In ruling on a motion for summary judgment, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the respondent, ad with competing inferences to be construed in the nonmovant's favor. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 909 (1st Dist. 1994).

A Defendant may move for summary judgment "at any time." *Id.* § 2-1005(b). Although summary judgment motions are typically filed after the close of discovery, there is no requirement for such a timeframe. *For persuasive authority, see Werenska v. Sawa's Old Warsaw, Inc.*, 2012 IL App (1st) 11671-U, ¶¶ 15–19 (unpublished) (citing authorities). Indeed, a party may file more than one motion for summary judgment. *Hiatt v. Ill. Tool Words*, 2018 IL App (2d) 170554, ¶ 46–47; *Pagano*, 257 Ill. App. 3d at 909 ("[S]ection 2-1005 of the Code of Civil Procedure places no limit on the number of motions for summary judgment that may be brought by a party."). This is consistent with the purpose of summary judgment, which is to "dispose of cases where [no dispute of material fact] exists so as to avoid the congestion of trial calendars and the expense of unnecessary trials." *Hiatt, supra*, at ¶ 46.

For the reasons discussed below, Plaintiff's wrongful-discharge action can and should be resolved in Defendants' favor now, based on two legal issues whose predicating facts cannot be disputed.

## V.      Argument

Plaintiff's theory is that his employment with the Effingham County Sheriff's Office came to an end because Effingham County (through its Board) passed a budget that eliminated funding for Plaintiff's job title, and that the County eliminated this funding in retaliation for Plaintiff's investigation into alleged wrongdoing by Sheriff's Office employees. Plaintiff advances his theory under both a common-law retaliatory discharge framework and under the Whistleblower Act.

Regardless of basis, however, Plaintiff has two fundamental issues with his case:

- First, neither party-Defendant to this case is nor was Plaintiff's "employer" (that would be the Sheriff's Office), and only Plaintiff's "employer" can be liable under Plaintiff's causes of action.

- Second, the Defendants' alleged misconduct (i.e., passing a budget) is the prototypical legislative action, entitling Defendants to the absolute legislative immunities provided for by the Tort Immunity Act.

Both of these issues pose questions of law, and the relevant facts cannot be disputed. Given that a party may file more than one summary judgment motion throughout the course of litigation, Defendants respectfully request this Court resolve these two issues (and therefore the entire case) now, potentially sparing some of the burden and expenses associated with any

additional discovery and/or other litigation defense costs, and promoting the expeditious resolution of dispositive issues.

### A. Defendants were not Plaintiff's "employer," and only an "employer" can be liable under Plaintiff's causes of action. (All Counts; All Defendants)

Illinois is an at-will employment state, where an employer may terminate an employee for any or no reason at all. *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶28 (2014). The retaliatory discharge/wrongful termination tort is a narrow exception to this general rule. *Id.* at ¶¶29, 39. One potential basis for a retaliatory discharge tort is when an employee is terminated due to the employee 'blowing the whistle' on alleged misconduct. *Id.* at ¶29. For its part, the General Assembly passed the Whistleblower Act, effectively codifying the common-law 'whistleblowing' retaliatory discharge tort. 740 ILCS 174/1 *et seq.*; *Sutherland v. Norfolk S. Ry.*, 356 Ill. App. 3d 620, 624 n.4 (1st Dist. 2005) (noting the common-law "'whistleblower' cause of action has since been codified in the Whistleblower Act").

Relevant here is that only a plaintiff's "employer" can be the target of a retaliatory discharge tort or a claim under the Whistleblower Act. *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 22 (1998) (retaliatory discharge); 740 ILCS 174/15(b), 30 (Whistleblower Act). This is an essential element of Plaintiff's *prima facie* case.

However, neither Defendant is *Plaintiff's* "employer." Defendants therefore cannot be liable for Plaintiff's causes of action, and summary judgment is warranted.

To start, it is undisputed that Plaintiff Brockett was employed by the Effingham County Sheriff's Office. (UMF #1, 7, 9). It is also undisputed that the Sheriff's Office is not a defendant in this case; rather, Plaintiff sued only Effingham County and its Board Chair, Jim Niemann. But neither the County nor Niemann had any "control" over Plaintiff such that he could even

arguably be their employee — it is the Sheriff who may hire, fire, demote, promote, train, and discipline Sheriff's Office employees like Plaintiff. (UMF #7). Moreover, naming the County as a defendant does not somehow mean the Sheriff's Office is also in the suit. The Sheriff is a distinct constitutional officer who is commissioned by the governor and accountable to the voters, not the County Board, 55 ILCS 5/3-6001, and Illinois law has long recognized that there is no master-servant relationship between a County and a Sheriff's Office. *See, e.g., Moy v. County of Cook*, 159 Ill. 2d 519, 524–525 (1994) (discussing how County cannot be vicariously liable for Sheriff's conduct); *Carver v. Sheriff of LaSalle Cty.*, 203 Ill. 2d 497 (2003) (holding that the Sheriff's Office is a "local public entity;" and therefore, a county is not the employer of a Sheriff); *Elston v. City of Kane*, 948 F.3d 884, 886 n.1 (7th Cir. 2020) (noting that a county Sheriff's Office was a deputy's employer, not the County itself).

Defendant Niemann poses an additional, distinct issue for Plaintiff's retaliatory discharge claim: he is a public employee or agent of Effingham County, rather than being the corporate entity (i.e., "employer") himself. Our Supreme Court has recognized that "the tort of retaliatory discharge may be committed only by the employer," as compared to the employee who allegedly "devise[s] the plan" to wrongfully discharge an employee. *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 21–22 (1998). Here, Defendant Niemann is alleged to have devised the scheme which resulted in the end of Plaintiff's employment with the Sheriff's Office. But this does not change the fact that Niemann is an individual, not a corporate entity or sole proprietor such that he could be deemed "the employer" for a retaliatory discharge tort.

8

Accordingly, neither Defendant could be Plaintiff's "employer" under the Whistleblower Act or the common-law retaliatory discharge tort. Plaintiff therefore lacks an element of his *prima facie* case that he can never establish, and summary judgment is warranted.

### B. Legislative immunity applies, as the Defendants' alleged misconduct was passing a county's budget. (All Counts; All Defendants)

Even setting aside the fact that neither Defendant is Plaintiff's "employer," the Defendants are also entitled to summary judgment because the alleged wrongful act they committed was a legislative action, and therefore immunized under the Tort Immunity Act.

Briefly stated: Both of Plaintiff's claims are predicated on the undisputed fact the Effingham County Board (with Jim Niemann as its chair) passed a budget for the Sheriff's Office for fiscal year 2015 — and this budget eliminated funding for Plaintiff's job title, causing him to lose his job. (Cmplt., Count I, ¶16; Count II, ¶ 15). However, Illinois law provides an absolute immunity for injuries caused by a municipality's legislative process — meaning if the immunity applied, the defendant's alleged mal intent is irrelevant. 745 ILCS 10/2-103; *id.* § 2-205; *see Reyes v. Bd. of Educ.*, 2019 IL App (1st) 180593, ¶35. "Passing a budget" is the quintessential legislative act. Therefore, Defendants are protected by the absolute legislative immunity applicable to municipalities and codified in the Tort Immunity Act. Summary judgment is warranted on both of Plaintiff's counts.

**First**, the Defendants are covered by Illinois' Local Governmental and Governmental Employee Tort Immunity Act ("Tort Immunity Act"). Effingham County itself is "local public entity," and Defendant Niemann is considered a "public employee" due to his position as chair of the Effingham County Board in 2014. (UMF #4); 745 ILCS 10/1-206 (defining "local public entity" to include "a county"); *id.* § 1-202, 1-207 (in conjunction, defining "public employee" to

be an "employee of a local public entity," which includes "a present or former * * * member of a board, commission or committee * * * whether or not compensated").

**Second**: Consistent with Illinois law, the County Board (of which Niemann was the Chair) is the legislative arm of Defendant Effingham County. (UMF #4–5); *see, e.g.*, 55 ILCS 5/5-1004 ("The powers of the county * * * shall be exercised by a county board"). Among other things, Illinois' Counties Code tasks counties with passing annual budgets as a general matter, and for sheriff's offices specifically. *See, e.g.*, 55 ILCS 6/6-1001 ("Annual Budget"); *id.* § 5-1106 ("It shall be the duty of the county board of each county: * * * To provide reasonable and necessary expenses for the use of the * * * sheriff[.]").

**Third**, an absolute legislative immunity is provided by Sections 2-103 and 2-205 of Tort Immunity Act for injuries incurred by the legislative process. *Carter v. Elmwood*, 162 Ill. App. 3d 235, 237 (3d Dist. 1987) (noting Section 2-205 is an absolute immunity).

The legislative immunities provided by these Sections are identical, only differing as to what type of defendant they protect. The Sections state, in their entirety:

> A *local public entity* is not liable for *an injury caused by adopting* or failing to adopt *an enactment* of by failing to enforce any law.

745 ILCS 10/2-103 (emphasis added).

> A *public employee* is not liable *for an injury caused by his adoption of*, or failure to adopt, *an enactment*, or by his failure to enforce any law.

745 ILCS 10/2-205 (emphasis added).

Unlike some other portions of the Tort Immunity Act, there is no "willful and wanton" limiting language (*cf.* 745 ILCS 10/2-202), or a provision permitting a statute to exclude the immunity in a given context. *Cf.* 745 ILCS 10/2-201) (providing absolute "discretionary" immunity

"[e]xcept as otherwise provided by Statute"). The Tort Immunity Act also does not specifically exempt retaliatory discharges or the Whistleblower Act from its protections. *See* 745 ILCS 10/2-101. Consequently, when this particular legislative immunity is deemed to apply to the Defendants' budgetary decision to eliminate funding for the Operations Sergeant position, then whatever the motivations for eliminating that funding is immaterial.

**Fourth (and finally)**, the legislative immunity provided in Section 2-205 and 2-103 applies even when a municipality or public employee eliminates funding for a plaintiff's job.

The best example Defendants have found is *Carter v. Elmwood*, where the Third District considered the question of whether the Tort Immunity Act "shields the municipality and its officials from liability where the discharge results from legislative action." 162 Ill. App. 3d 235, 238 (3d Dist. 1987) (dismissing retaliatory discharge count with prejudice). The *Carter* court's reasoning expressly discussed Section 2-205 ("public employees"), but its reasoning is equally applicable to the legislative immunity provided in Section 2-103 ("public entities"), as the substantive language of both Sections is identical.

The *Carter* plaintiff was one of two full-time city police officers, and reported illegal conduct by the city's other full-time officer, the chief of police. *Id.* at 235–36. After the *Carter* plaintiff reported this misconduct, the city council passed a budget appropriation that reduced the police department's funding for one full-time patrolman position — i.e., for the *Carter* plaintiff's job. *Id.* Plaintiff filed a complaint against the city, its mayor, and various city council members, alleging, in relevant part, that he was discharged in retaliation for reporting the chief of police's misconduct. *Id.* at 236.

After assuming the plaintiff's allegations were true and presented a factual basis for a retaliatory discharge claim, the Third District concluded that Section 2-205 of the Tort Immunity Act defeated plaintiff's claim. *Id.* 237–38. To the Third District, the Act's legislative immunity was "clear and unequivocal," and "specifically states that a legislative body is not liable for an injury caused by the legislative process." *Id.* at 237. Moreover, this immunity was absolute, as it contained no limiting "willful and wanton" language. *Id.* Accordingly, the immunity was not defeated by claiming the city council's funding decision had some mal intent. All of this was consistent with the "strong public policy concerns which dictate that public officials be shielded from liability in civil actions based upon their vote, in the exercise of discretion, either for or against any legislation." *Id.*

Here, the Defendants are accused of doing the same conduct that was immunized in *Carter* — namely, passing a budget that eliminated funding for a law enforcement officer's position, and after the officer reported misconduct by colleagues. As in *Carter*, the legislative immunities provided for by the Tort Immunity Act should apply.

Defendants note, however, that *Carter* pre-dates passage of Illinois' Whistleblower Act, and by necessity did not discuss application of legislative immunity to the statutory version of a retaliatory discharge claim. Defendants believe this is of no import. To start, the Whistleblower Act itself contains no immunity provisions that would supersede the Tort Immunity Act. *See* 740 ILCS 174/1 *et seq.* For its part, the legislative immunities in the Tort Immunity Act do not subject themselves to any statutory exceptions. (See ¶ "Third," *supra*). Considering the Whistleblower Act is essentially a codification of the common-law retaliatory discharge tort itself, particularly when claim is made by a public employee, *Sutherland v. Norfolk S. Ry.*, 356 Ill. App. 3d 620, 624 n.4 (1st

12

Dist. 2005), there is no apparent reason the logic in *Carter* could not also be applied to Plaintiff's Whistleblower Act claims.

Thus, summary judgment is warranted for all Defendants on all counts against them, as they are protected by the absolute legislative immunity provided by the Tort Immunity Act.

## VI.    Conclusion

For the reasons stated above, summary judgment is warranted for all Defendants on all counts in Plaintiff's Complaint. Should this Court disagree, Defendants respectfully request in the alternative that this Court enter partial summary judgment to the extent this Court believes is warranted, and issue an order clearly identifying what remaining issues and discovery remain for the parties to conduct discovery on.

THE COUNTY OF EFFINGHAM, ILLINOIS and
JIM NIEMANN, Defendants

BY:/s/ Keith E. Fruehling
HEYL, ROYSTER, VOELKER & ALLEN
ARDC #: 6216098
301 N. Neil St., Suite 505
Champaign, IL 61820
Telephone  217.344.0060
PRIMARY E-MAIL:  urbecf@heylroyster.com
SECONDARY E-MAIL #1:  kfruehling@heylroyster.com
SECONDARY E-MAIL #2:  tparker@heylroyster.com

## CERTIFICATE OF FILING AND PROOF OF SERVICE

I certify that on March 25, 2021, I electronically filed and transmitted the foregoing DEFENDANTS' MEMORANDUM IN SUPPORT THEIR MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court for the Fourth Judicial Circuit, Effingham County, Illinois, by using the Odyssey eFileIL system.

I further certify that on March 25, 2021, the individual named below has been served by transmitting a copy from my e-mail address to all primary and secondary e-mail addresses of record designated by that individual.

Mr. Michael J. Meyer - mjmeyer@consolidated.net
Attorney at Law
404 S. Fourth St.
P.O. Box 129
Effingham, IL 62401

Under penalties as provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure [735 ILCS 5/1-109], I certify that the statements set forth in this **Certificate of Filing and Proof of Service** are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

/s/Tammy Parker
Heyl, Royster, Voelker & Allen, PC

38941191_1

10452-12
KEF/tlp

## IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
## EFFINGHAM COUNTY, ILLINOIS

| | | | |
|---|---|---|---|
| Thad F. Brockett, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No.: | 15 L 52 |
| | ) | | |
| The County of Effingham, Illinois, a body | ) | | |
| politic and corporate, and Jim Niemann, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## DEFENDANTS' SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES

## TO PLAINTIFF'S COMPLAINT

NOW COME the Defendants, THE COUNTY OF EFFINGHAM, ILLINOIS and JIM NIEMANN,

by HEYL, ROYSTER, VOELKER & ALLEN, their attorneys, and for their Second Amended Answer &

Affirmative Defenses to the Complaint of the Plaintiff, THAD F. BROCKETT, state as follows:

### COUNT I
### (Wrongful Discharge)

1.      That the Defendant, The County of Effingham, Illinois, is a body politic and

corporate organized and existing by virtue of the laws of the State of Illinois.

**ANSWER**:      Defendants admit the allegations of Paragraph 1.

2.      That on December 16, 2014, and at all relevant times prior thereto, the

Defendant, Jim Niemann, was Chairman of the Effingham County Board.

**ANSWER**:      Defendants admit the allegations of Paragraph 2.

3.      That from July 15, 1996 until December 16, 2014, the Plaintiff, Thad F. Brockett,

was an employee of the Effingham County Sheriff's Department.

**ANSWER**:      Defendants admit the allegations of Paragraph 3.

Exhibit A

4.      That on September 17, 2012, the Plaintiff was promoted by Sheriff John H. Monnet to the position of Operations Sergeant, which included duties of supervision and oversight of jail personnel, telecommunications personnel, and court security personnel.

**ANSWER:**     Defendants admit the allegations of Paragraph 4.

5.      That, as of September 17, 2012, qualified employees of the Effingham County Sheriff's Department, including the Plaintiff, were members of the Fraternal Order of Police, a labor union.

**ANSWER:**     Defendants deny the allegations of Paragraph 5 as alleged.

6.      That upon taking office as Chairman of the County Board in 2012, Defendant, Jim Niemann, began a course of conduct designed to interfere with, control and manipulate the operations of the Effingham County Sheriff's Department over the objections of Sheriff Monnet; and that said course of conduct included public accusations of mismanagement and wrongdoing by the Sheriff in his operation of the Department.

**ANSWER:**     Defendants deny the allegations of Paragraph 6.

7.      That the Plaintiff supported the Sheriff in his disputes with Defendant Niemann, and that Defendant Niemann knew that Plaintiff supported the Sheriff's positions in the matters in dispute.

**ANSWER:**     Defendants deny the allegations of Paragraph 7 as alleged.

8.      That during January of 2013, the Plaintiff commenced an investigation of two Effingham County correctional officers and discovered that said employees were consistently violating County Jail Standards, to-wit: 20 Ill. Adm. Code 701.130 promulgated by the Illinois Department of Corrections by authority of 730 ILCS 5/3-15-2, intended to promote inmate

2

safety and security, by failing to conduct required periodic personal observation of inmates and by engaging in a scheme to falsify jail records to conceal their violations.

**ANSWER:**    Defendants have insufficient information to either admit or deny the allegations of Paragraph 8, and therefore deny the same.

9.    That the Plaintiff reported said misconduct to Sheriff Monnet, and that the Sheriff discharged said correctional officers on March 6, 2013.

**ANSWER:**    Defendants admit that officers were discharged as a result of some alleged misconduct, but deny the remaining allegations of Paragraph 9.

10.    That, consistent with the practice of Defendant Niemann to assert unwarranted power and authority over Sheriff Monnet and the Sheriff's Department, the two discharged correctional officers were subsequently reinstated due to the demands of the Defendants.

**ANSWER:**    Defendants deny the allegations of Paragraph 10.

11.    That during mid-2013, the Plaintiff conducted an investigation of the same two correctional officers and collected evidence that they had committed multiple violations of the Criminal Code by obtaining or attempting to obtain sexual favors from female inmates through a pattern of sexual harassment. Among the criminal statutes implicated by the conduct of the correctional officers were: Official Misconduct, 720 ILCS 5/33-3; and Custodial Sexual Misconduct, 720 ILCS 5/11-9.2.

**ANSWER:**    Defendants have insufficient information to either admit or deny the allegations of Paragraph 11, and therefore deny the same.

3

12.     That the Plaintiff reported his findings to Sheriff Monnet, to the Effingham County State's Attorney, and the Illinois State Police, but that the correctional officers were not disciplined or prosecuted due to influence asserted by the Defendants.

**ANSWER:**     Defendants have insufficient information to either admit or deny the allegations of Paragraph 12, and therefore deny the same.

13.     That during early 2014, Defendant Niemann commenced proceedings with the Illinois Labor Relations Board designed to have the Plaintiff removed from the union and thus deprive Plaintiff of union protection in his employment with the County of Effingham, so that the Defendants could discharge the Plaintiff without intervention by the union.

**ANSWER:**     Defendants deny the allegations of Paragraph 13 as alleged.

14.     That Plaintiff was then wrongfully removed as a member of the union due to a failure of union representatives to properly protect his interests.

**ANSWER:**     Defendants deny the allegations of Paragraph 14.

15.     That Sheriff Monnet did not seek reelection in 2014, and that the newly elected Sheriff, David Mahon, took office on December 1, 2014.

**ANSWER:**     Defendants admit the allegations of Paragraph 15.

16.     That on December 16, 2014, acting on instructions from the Defendants, Sheriff Mahon discharged Plaintiff from the employ of the Sheriff's Department of Effingham County based upon the pretext that the County Board, in its budget for the fiscal year December 1, 2014 to November 30, 2015 had deleted funding for the position of Operations Sergeant.

**ANSWER:**     Defendants deny the allegations of Paragraph 16.

4

17.     That the Defendants caused the discharge of the Plaintiff as an employee of the

County of Effingham in retaliation for:

> (a)     The Plaintiff's political support for Sheriff Monnet as to the issues relating
> to the vendetta of Defendant Niemann against Sheriff Monnet; and,
>
> (b)     The Plaintiff's investigation and reporting of wrongdoing, including
> violation of jail standards and criminal activity, by the two Effingham
> County correctional officers.

**ANSWER:**     Defendants deny the allegations of Paragraph 17, including all subparts thereto,

including (a) and (b).

18.     That as a direct and proximate result of the retaliatory discharge of Plaintiff by

the Defendants, the Plaintiff has lost and will in the future lose income, has experienced and will

in the future experience emotional distress, and has suffered damage to his reputation in the

community.

**ANSWER:**     Defendants deny the allegations of Paragraph 18.

WHEREFORE, the Defendants, THE COUNTY OF EFFINGHAM, ILLINOIS and JIM

NIEMANN, respectfully request that this Court enter judgment on their behalf and against the

Plaintiff, THAD F. BROCKETT, and that Defendants recover their costs of suit.

DEFENDANTS DEMAND A TRIAL BY JURY OF TWELVE ON ALL ALLEGATIONS.

## <u>COUNT II</u>
### (Whistleblower Act)

1.     That the Defendant, The County of Effingham, Illinois, is a body politic and

corporate organized and existing by virtue of the laws of the State of Illinois.

**ANSWER:**     Defendants admit the allegations of Paragraph 1.

5

2.      That on December 16, 2014, and at all relevant times prior thereto, the Defendant, Jim Niemann, was Chairman of the Effingham County Board.

**ANSWER:**      Defendants deny the allegations of Paragraph 2 as alleged.

3.      That from July 15, 1996 until December 16, 2014, the Plaintiff, Thad F. Brockett, was an employee of the Effingham County Sheriff's Department.

**ANSWER:**      Defendants admit the allegations of Paragraph 3.

4.      That on September 17, 2012, the Plaintiff was promoted by Sheriff John H. Monnet to the position of Operations Sergeant, which included duties of supervision and oversight of jail personnel, telecommunications personnel, and court security personnel.

**ANSWER:**      Defendants admit the allegations of Paragraph 4.

5.      That, as of September 17, 2012, qualified employees of the Effingham County Sheriff's Department, including the Plaintiff, were members of the Fraternal Order of Police, a labor union.

**ANSWER:**      Defendants deny the allegations of Paragraph 5 as alleged.

6.      That upon taking office as Chairman of the County Board in 2012, Defendant, Jim Niemann, began a course of conduct designed to interfere with, control and manipulate the operations of the Effingham County Sheriff's Department, including the assignment of personnel within the Sheriff's Department.

**ANSWER:**      Defendants deny the allegations of Paragraph 6.

7.      That during January of 2013, the Plaintiff commenced an investigation of two Effingham County correctional officers and discovered that said employees were consistently violating County Jail Standards, to-wit: 20 Ill. Adm. Code 701.130 promulgated by the Illinois

6

Department of Corrections by authority of 730 ILCS 5/3-15-2, intended to promote inmate safety and security, by failing to conduct required periodic personal observation of inmates and by engaging in a scheme to falsify jail records to conceal their violations.

**ANSWER:**   Defendants have insufficient information to either admit or deny the allegations of Paragraph 7, and therefore deny the same.

8.   That the Plaintiff reported said misconduct to Sheriff Monnet, and that the Sheriff discharged said correctional officers on March 6, 2013.

**ANSWER:**   Defendants admit that officers were discharged as a result of some alleged misconduct, but deny the remaining allegations of Paragraph 8.

9.   That, consistent with the practice of Defendant Niemann to assert unwarranted power and authority over Sheriff Monnet and the Sheriff's Department, the two discharged correctional officers were subsequently reinstated due to the demands of the Defendants.

**ANSWER:**   Defendants deny the allegations of Paragraph 9.

10.   That during mid-2013, the Plaintiff conducted an investigation of the same two correctional officers and collected evidence that they had committed multiple violations of the Criminal Code by obtaining or attempting to obtain sexual favors from female inmates through a pattern of sexual harassment. Among the criminal statutes implicated by the conduct of the correctional officers were: Official Misconduct, 720 ILCS 5/33-3; and Custodial Sexual Misconduct, 720 ILCS 5/11-9.2.

**ANSWER:**   Defendants have insufficient information to either admit or deny the allegations of Paragraph 10, and therefore deny the same.

11.     That the Plaintiff reported his findings to Sheriff Monnet, to the Effingham County State's Attorney, and the Illinois State Police, but that the correctional officers were not disciplined or prosecuted due to influence asserted by the Defendants.

**ANSWER:**     Defendants have insufficient information to either admit or deny the allegations of Paragraph 11, and therefore deny the same.

12.     That during early 2014, Defendant Niemann commenced proceedings with the Illinois Labor Relations Board designed to have the Plaintiff removed from the union and thus deprive Plaintiff of union protection in his employment with The County of Effingham, so that the Defendants could discharge the Plaintiff without intervention by the union.

**ANSWER:**     Defendants deny the allegations of Paragraph 12 as alleged.

13.     That Plaintiff was then wrongfully removed as a member of the union due to a failure of union representatives to properly protect his interests.

**ANSWER:**     Defendants deny the allegations of Paragraph 13.

14.     That Sheriff Monnet did not seek reelection in 2014, and that the newly elected Sheriff, David Mahon, took office on December 1, 2014.

**ANSWER:**     Defendants admit the allegations of Paragraph 14.

15.     That on December 16, 2014, acting on instructions from the Defendants, Sheriff Mahon discharged Plaintiff from the employ of the Sheriff's Department of Effingham County based upon the pretext that the County Board, in its budget for the fiscal year December 1, 2014 to November 30, 2015 had deleted funding for the position of Operations Sergeant.

**ANSWER:**     Defendants deny the allegations of Paragraph 15.

8

16.     That the Defendants caused the discharge of the Plaintiff as an employee of the County of Effingham in retaliation for the Plaintiff's investigation and reporting of wrongdoing, including violation of jail standards and criminal activity, by the two Effingham County correctional officers.

**ANSWER:**     Defendants deny the allegations of Paragraph 16.

17.     That as a direct and proximate result of the retaliatory discharge of Plaintiff by the Defendants, the Plaintiff has lost and will in the future lose income, has experienced and will in the future experience emotional distress, and has suffered damage to his reputation in the community.

**ANSWER:**     Defendants deny the allegations of Paragraph 17.

WHEREFORE, the Defendants, THE COUNTY OF EFFINGHAM, ILLINOIS and JIM NIEMANN, respectfully request that this Court enter judgment on their behalf and against the Plaintiff, THAD F. BROCKETT, and that Defendants recover their costs of suit.

DEFENDANTS DEMAND A TRIAL BY JURY OF TWELVE ON ALL ALLEGATIONS.

<u>**AFFIRMATIVE DEFENSES**</u>

NOW COME the Defendants, THE COUNTY OF EFFINGHAM, ILLINOIS and JIM NIEMANN, by HEYL, ROYSTER, VOELKER & ALLEN, their attorneys, and for Affirmative Defenses to the Complaint of the Plaintiff, THAD F. BROCKETT, state as follows:

1.     Defendants, a local public entity and its employee, are entitled to the dismissal with prejudice of this case pursuant to the defense of laches as the Plaintiff has failed to affirmatively offer an explanation for his delay in filing the instant suit and have suffered prejudice as a result of the unexplained delay.

9

2.  To the extent that Plaintiff's Complaint references any action or omission on the part of the Defendants more than one year prior to the date that the Plaintiff filed his lawsuit on the state law count(s), said claim(s) is barred by the statute of limitations under the Local Governmental and Governmental Employees Tort Immunity Act. (745 ILCS 10/8-101).

3.  Pursuant to the Local Governmental and Governmental Employees Tort Immunity Act, Sec. 2-109, the Defendant cannot be liable for an injury resulting from an act or omission of its employee where the employee is not liable on any and all counts rooted in state law.

4.  Defendant, a local public entity, is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by Plaintiff on any count or theory in this Complaint, under federal law and/or pursuant to the Local Governmental and Governmental Employees Tort Immunity Act, Sec. 2-102.

5.  Defendant, a local public entity, is not liable for an injury resulting from an act or omission of its employee where the employee is not liable on any state tort theory pursuant to the Local Governmental and Governmental Employees Tort Immunity Act, Sec. 2-109.

6.  Plaintiff was an at-will employee at the time he was informed that his position had been eliminated.

7.  Plaintiff failed to mitigate his damages when he refused an offer of alternative employment with the Effingham County Sheriff's Department.

8.  A public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused. Any decisions regarding the budget of the Effingham County Sheriff's Department were unique to

10

the Effingham County Board, including its Chairman. The County Board alone had the authority and discretion to make decisions related to the allocation of funds, balancing the priorities of the Sheriff's budget against the rest of Effingham County governmental operations. Since there was no prescribed manner in which the Effingham County Board was to act in the allocation of funding for all of Effingham County governmental operations, the Board also had to deliberate as to what funding allocation to the Sheriff's office's was advisable in light of overall budgetary and other concerns.

9.      Neither Defendant can be liable for an injury caused by their adoption of, or failure to adopt, an enactment, or by their failure to enforce any law. 745 ILCS 10/2-103, 2-205.

DEFENDANTS DEMAND A TRIAL BY JURY OF TWELVE ON ALL AFFIRMATIVE DEFENSES.

THE COUNTY OF EFFINGHAM, ILLINOIS and JIM NIEMANN, Defendants

BY: /s/ Keith E. Fruehling
Keith E. Fruehling, ARDC #: 6216098
HEYL, ROYSTER, VOELKER & ALLEN
301 N. Neil Street, Suite 505
Champaign, IL 61820
Telephone  217.344.0060
Email  kfruehling@heylroyster.com

31111898_1

11

COPY

10452-12
KEF/tlp

10452-12
KEF BMS

E-FILED
Feb 3 2021
01:51PM

JOHN P NIEMERG
Effingham County, IL

ID #70121

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
EFFINGHAM COUNTY, ILLINOIS

Thad F. Brockett,                                    )
                                                     )
            Plaintiff,                               )
                                                     )
vs.                                                  )        No.:   15 L 52
                                                     )
The County of Effingham, Illinois, a body           )
politic and corporate, and Jim Niemann,             )
                                                     )
            Defendants.                               )

**ORDER**

Cause coming to be heard on the parties' Agreed Motion for Leave to File Defendants'

Second Amended Answer and Affirmative Defenses to Plaintiff's Complaint, *Instanter,* the Court,

having been fully advised in the premises,

IT IS HEREBY ORDERED AS FOLLOWS:

The parties' Agreed Motion for Leave to File Defendants' Second Amended Answer and

Affirmative Defenses to Plaintiff's Complaint, *Instanter,* is hereby granted. The Circuit Clerk is

hereby directed to file Defendants' Second Amended Answer and Affirmative Defenses to

Plaintiff's Complaint (Exhibit A to the instant motion), *instanter,* and record the same on the

Court's official docket.

Entered: _____2/3/2021_____          _____/s/ Judge DeLong_____.
                                                              Judge

Approved as to form:

/s/ Michael Meyer *(w/consent)*          /s/ Keith E. Fruehling
Counsel for Plaintiff                    Counsel for Defendants
404 S. Fourth St.                        301 N. Neil St., Suite 505
P.O. Box 129                             Champaign, IL 61820
Effingham, IL 62401                      Email: urbecf@heylroyster.com
Email: mjmeyer@consolidated.net

10452-12
KEF/tlp

## IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
## EFFINGHAM COUNTY, ILLINOIS

| | | |
|---|---|---|
| Thad F. Brockett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.:   15 L 52 |
| | ) | |
| The County of Effingham, Illinois, a body | ) | |
| politic and corporate, and Jim Niemann, | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF JAMES "JIM" NIEMANN

I, James Niemann, being duly sworn and under oath, over 21 years of age and under no legal disability, state if called as a witness I would competently testify to the following:

1.      My name is James ("Jim") Niemann, and I was the chair of the county board for Effingham County in 2014, and continue to hold that position. By virtue of this position, I am familiar with Effingham County's operations and its institutional relationship with, among other things, the Effingham County Sheriff's Office ("Sheriff's Office").

2.      The county board is the legislative component of Effingham County.

3.      As the legislative actor for Effingham County, the county board has the obligation to pass budgets for funding the operations of both the County itself and the various County Officers, which would include the Sheriff's Office.

4.      On December 15, 2014, Effingham County passed by vote of its county board a budget for fiscal year fiscal year 2015, which started December 1, 2014 and ended November 30, 2015.

Exhibit B

5.      Attached to this affidavit as Exhibit 1 is a copy of Effingham County Ordinance no. 14-96, which adopted the budget of Effingham County for fiscal year 2015. My signature is on the budget, signing on behalf of the County Board.

6.      Attached to this affidavit as Exhibit 2 is an excerpt from Effingham County's budget for the 2015 fiscal year. Specifically, Exhibit 2 lists the appropriations/budget for the Sheriff's Office that was contained in Effingham County Ordinance no. 14-96.

7.      As seen in Exhibit 2, as part of the 2015 budget for the Sheriff's Office, Effingham County decided to eliminate funding for the Operations Sergeant position. This decision is indicated in the budget by leaving the salary portion of the budget blank for the Operations Sergeant position.

8.      In addition to the Operations Sergeant position, Exhibit 2 shows that there was no funding for the Assistant Jail Administrator or School Resource Officer positions in fiscal year 2015.

9.      Effingham County — through its board, or otherwise — does not have the ability to hire, fire, discipline, promote, demote, train, schedule, or equip employees of the Sheriff's Office. Those decisions and/or issues are the prerogative of the Effingham County Sheriff him- or herself.

10.     Stated differently, Sheriff's Office employees are just that, Sheriff's Office (not County) employees, and are subject to the Sheriff's personnel decisions and (if applicable) the strictures of the collective bargaining agreement between the Sheriff's Office and its employees. For example, if I was to ask the Sheriff to fire a specific individual or make an individual work a specific shift, the Sheriff would not have any obligation to act on my request.

11.     I should note, however, that Illinois law permits the County to set the number of deputies a Sheriff may appoint. However, the Sheriff has total authority to make any such appointments.

12.     Neither Effingham County nor the Sheriff's Office had a Sheriff's Merit Review Commission in 2014.

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes to be true.

Date: 3\19\2021

/s/ Jim Niemann

Jim Niemann

## ORDINANCE NO. 14-96

### AN ORDINANCE BY THE EFFINGHAM COUNTY BOARD ADOPTING THE FY2015 BUDGET

WHEREAS, 55 ILCS 5/6-1001 et.seq., sets forth the procedure and regulations governing the creation and the operation of County Budgets; and,

WHEREAS, money must be appropriated before it can be legally spent; and,

WHEREAS, the Budget of Effingham County also serves as its Appropriation Ordinance; and,

WHEREAS, money may only be transferred within a budget fund by a 2/3 vote of the County Board and increases in an appropriation fund can only be made on an immediate emergency basis by a 2/3 vote of the County Board; now,

BE IT ORDAINED BY THE COUNTY BOARD OF EFFINGHAM COUNTY, ILLINOIS, THAT:

The attached document shall serve as both the Budget and Appropriation Ordinance of Effingham County for the fiscal period beginning December 1, 2014, and ending November 30, 2015; and ,

A fund may only be increased by a 2/3 vote of the County Board appropriating additional money to meet an immediate emergency; now,

Money appropriated within the statute limitation, designated as "for contingent, incidental, miscellaneous or general county purposes," shall not be used to supplement any line item of the Budget without a 2/3 vote of the County Board.

THIS ORDINANCE PASSED, ADOPTED and APPROVED THIS 15th DAY OF DECEMBER 2014 AT A REGULAR MEETING DATE OF THE EFFINGHAM COUNTY BOARD.

MOTION    ROB ARNOLD

SECOND    JOE THOELE

/s/ James Niemann

James Niemann, Chairman
Effingham County Board

ATTEST:

/s/ Kerry J. Hirtzel

Kerry J. Hirtzel
Effingham County Clerk

#22

Exhibit 1

Brockett -- 000034

STATEMENT OF EXPENDITURES AND STATEMENT OF APPROPRIATIONS
For the Fiscal Period December 1, 2014 to November 30, 2015

| Account # | Account Description | 2015 Proposed Appropriations | | Changes | | 2015 Final Appropriations |
|---|---|---|---|---|---|---|
| | **SHERIFF** | | | | | |
| | **PERSONAL SERVICES & FRINGE BENEFITS** | | | | | |
| 01-01.51010-008 | SHERIFF'S SALARY | $ | 68,077.00 | | $ | 68,077.00 |
| 01-01.51026-008 | PROBATION LIAISON SPECIALISTS | $ | 37,839.00 | | $ | 37,839.00 |
| 01-01.51040-008 | CHIEF SHERIFF DEPUTY | $ | 61,884.00 | | $ | 61,884.00 |
| 01-01.51042-008 | OPERATIONS SERGEANT | | | | | |
| 01-01.51051-008 | CLERICAL - REGULAR | $ | 37,361.00 | | $ | 37,361.00 |
| 01-01.51052-008 | CLERICAL - PART-TIME | $ | - | | $ | - |
| 01-01.51054-008 | DEPUTY SHERIFFS | $ | 915,140.00 | | $ | 915,140.00 |
| 01-01.51055-008 | PROCESS SERVER | $ | 47,805.00 | | $ | 47,805.00 |
| 01-01.51056-008 | CORRECTIONAL OFFICERS | $ | 415,700.00 | | $ | 415,700.00 |
| 01-01.51057-008 | JAIL ADMINISTRATOR | $ | 45,449.00 | | $ | 45,449.00 |
| 01-01.51060-008 | OFFICE DEPUTY | $ | 125,957.00 | | $ | 125,957.00 |
| 01-01.51062-008 | PART-TIME DEPUTIES | $ | 30,000.00 | | $ | 30,000.00 |
| 01-01.51065-008 | HOLIDAY BUY-BACK | $ | 25,000.00 | | $ | 25,000.00 |
| 01-01.51068-008 | PART-TIME CORRECTIONAL OFFICERS | $ | 35,000.00 | | $ | 35,000.00 |
| 01-01.51069-008 | OVERTIME - CORR. OFFICERS | $ | 7,500.00 | | $ | 7,500.00 |
| 01-01.51070-008 | TELE-COMMUNICATOR | $ | 319,251.00 | | $ | 319,251.00 |
| 01-01.51075-008 | TELE-COMMUNICATOR PART-TIME | $ | 30,000.00 | | $ | 30,000.00 |
| 01-01.51077-008 | OVERTIME - DEPUTIES | $ | 45,000.00 | | $ | 45,000.00 |
| 01-01.51078-008 | OVERTIME - TELE-COMMUNICATOR | $ | 10,000.00 | | $ | 10,000.00 |
| 01-01.51079-008 | ASSISTANT JAIL ADMINISTRATOR | $ | - | | $ | - |
| 01-01.51080-008 | SCHOOL RESOURCE OFFICERS | $ | - | | $ | - |
| 01-01.51082-008 | ANNIVERSARY BONUS | $ | 20,225.00 | | $ | 20,225.00 |
| | **CONTRACTUAL SERVICES** | | | | | |
| 01-02.51112-008 | MAINTENANCE OF VEHICLES | $ | 25,000.00 | $ | 4,233.00 $ | 29,233.00 |
| | | | | Vehicle Repair/Reimburs by Ins. To Gen Co. | | |
| 01-02.51113-008 | MAINTENANCE OF EQUIPMENT | $ | 38,000.00 | | $ | 38,000.00 |
| 01-02.51150-008 | TRAVEL | $ | 2,000.00 | | $ | 2,000.00 |
| 01-02.51170-006 | MEDICAL | $ | 5,000.00 | | $ | 5,000.00 |
| 01-02.51181-008 | POSTAGE AND FREIGHT | $ | - | | $ | - |
| 01-02.51183-008 | PRINTING AND BINDING | $ | 2,000.00 | | $ | 2,000.00 |
| 01-02.51211-008 | PRISONER'S MEALS | $ | 102,000.00 | | $ | 102,000.00 |
| 01-02.51220-008 | TRAINING PROGRAMS | $ | 7,500.00 | | $ | 7,500.00 |
| 01-02.51230-008 | DUES AND SUBSCRIPTIONS | $ | 1,000.00 | | $ | 1,000.00 |
| 01-02.51252-008 | LAUNDRY | $ | - | | $ | - |
| 01-02.51260-008 | GUARDING PRISONERS | $ | - | | $ | - |
| 01-02.51261-008 | BOARDING PRISONERS OUTSIDE COUNTY | $ | 11,000.00 | $ | - $ | 11,000.00 |
| | **SHERIFF SUB TOTAL:** | $ | 2,470,688.00 | $ | 4,233.00 $ | 2,474,921.00 |

Exhibit 2

Brockett -- 000017

STATEMENT OF EXPENDITURES AND STATEMENT OF APPROPRIATIONS
For the Fiscal Period December 1, 2014 to November 30, 2015

| Account # | Account Description | 2015 Proposed Appropriations | | Changes | 2015 Final Appropriations | |
|---|---|---|---|---|---|---|

**SHERIFF CONT'D**

**COMMODITIES**

| Account # | Account Description | | | | | |
|---|---|---|---|---|---|---|
| 01-02.51310-008 | OFFICE SUPPLIES | $ | 6,000.00 | | $ | 6,000.00 |
| 01-02.51321-008 | PATROL OPERATION SUPPLIES | $ | 7,500.00 | | $ | 7,500.00 |
| 01-02.51322-008 | JAIL SUPPLIES | $ | 15,000.00 | | $ | 15,000.00 |
| 01-02.51330-008 | EQUIPMENT SUPPLIES | $ | 5,000.00 | | $ | 5,000.00 |
| 01-02.51340-008 | LAW BOOKS AND REFERENCE MATERIALS | $ | 100.00 | | $ | 100.00 |
| 01-02.51352-008 | DRUGS/MEDICATIONS | $ | 10,000.00 | | $ | 10,000.00 |
| 01-02.51381-008 | GASOLINE AND OIL | $ | 100,000.00 | | $ | 100,000.00 |
| 01-02.51390-008 | UNIFORMS | $ | 9,000.00 | | $ | 9,000.00 |
| 01-02.51389-008 | MINOR EQUIPMENT < $5,000 | $ | - | | $ | - |

**CAPITAL OUTLAY**

| Account # | Account Description | | | | | |
|---|---|---|---|---|---|---|
| 01-02.51550-008 | VEHICLES | $ | 27,000.00 | | $ | 27,000.00 |
| 01-02.51570-008 | EQUIPMENT >$5,000 | $ | 40,000.00 | | $ | 40,000.00 |
| 01-02.51571-008 | AUTOMATED FINGERPRINT TRANSMISSION | $ | - | $ | - | $ | - |
| | SHERIFF SUB TOTAL: | $ | 219,600.00 | $ | - | $ | 219,600.00 |
| | SHERIFF TOTAL: | $ | 2,690,288.00 | $ | 4,233.00 | $ | 2,694,521.00 |

Brockett -- 000018

IN THE CIRCUIT COURT
FOR THE FOURTH JUDICIAL CIRCUIT
EFFINGHAM COUNTY, EFFINGHAM, ILLINOIS

Thad F. Brockett,

              Plaintiff,

        vs.

The County of Effingham,
Illinois, a body politic and
corporate, and Jim Niemann,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)

No. 2015L52

## **ABSWERS TO INTERROGATORIES DIRECTED TO PLAINTIFF**

Now comes the Plaintiff, Thad F. Brockett, by Michael J. Meyer, his attorney, and for his Answers to Interrogatories Directed to Plaintiff states:

1.     Give the full name, address, date of birth, email address(es), if any of each claimant at the time of the incident, and any other names the claimant has or may have used at any time, including but not limited to, maiden name, or name taken during a prior marriage.

ANSWER:

Thad Frederick Brockett

Redacted       , Effingham, IL 62401

Redacted

Redacted   @outlook.com

| Exhibit C |
| :-: |

1

2.    In your Complaint, you identify the following "Causes of Action":

   a).    A wrongful discharge action for termination of Defendant and **contrary to public policy**, in retaliation for Plaintiff's investigation of correctional officer misconduct and conclusion said misconduct to "criminal statutes";

   b).    Violation of Illinois Whistleblower Act involving the **disclosure of certain allegedly improper conduct on behalf of Effingham correction officers and for other improper employment actions** which **deprived Plaintiff his public employment without due process of law**;

For each Cause of Action allegedly based on a state statute, identify the specific statutory citation for each such statute, including the specific section of that statute that you claim supports your private cause of action. Further, please provide **all** criminal statutes Plaintiff believed the correctional officers violated. Finally, please provide the complete factual basis for each of the above alleged causes of action, including, but not limited to, the complete factual basis for the bold, italicized highlighted language in each above.

   ANSWER:    The cause of action alleged in Count I is not based upon a state statute. The cause of action alleged in Count II is based upon the Whistleblower Act. The criminal statutes of which Plaintiff is aware are cited in paragraphs 11 of Count I and 10 of Count II. The factual basis for each cause of action are alleged in the Complaint.

3.    For each "Cause of Action" identified above, separately identify each and every person that is known or believed to have knowledge concerning the specific Cause of Action alleged; the source of each person's knowledge; contact information for that person; and, identify what knowledge each witness allegedly possesses.

ANSWER:  The causes of action are based upon the same facts. Therefore, the witnesses cannot be separated by Count.

Known witnesses are:

Defendant Nieman:    The defense has contact information. Defendant Nieman possesses information concerning Plaintiff's investigation of the correctional officers, the attacks upon Sheriff Monnet and Chief Deputy Loy, and the termination of the Plaintiff.

All former Respondents in Discovery:  The defense has contact information on these individuals.    These individuals, except Sheriff Mahon, are believed to possess information concerning the Plaintiff's investigation of the correctional officers, the attacks upon Sheriff Monnet and Chief Deputy Loy, and the termination of the Plaintiff.

Former Respondent in Discovery David Mahon is the current Sheriff of Effingham County, who is believed to possess information pertaining to the termination of the Plaintiff.

County Clerk Kerry Hirtzel:  The defense has contact information. Mr. Hirtzel is believed to possess information concerning the creation of a budget creating and eliminating a line item for the position of Operations Sergeant and other matters pertaining to the termination of the Plaintiff. He is also believed to possess information pertaining to the attacks upon Sheriff Monnet and Chief Deputy Loy.

Former Sheriff John Monnet:  Redacted                                  , Illinois.   217-Redacted .   Sheriff Monnet possesses knowledge of all issues in this case, including the investigation of the correctional officers by the Plaintiff, the attacks upon himself and the Chief Deputy Loy by Defendant Nieman and others, and the termination of the Plaintiff.  He also possesses knowledge of the performance of the Plaintiff in his job duties as Operation Sergeant and otherwise.

3

Former Chief Deputy John Loy:  Age 64, Redacted                    ,
Redacted  , Illinois, Redacted        .  Former Chief Deputy Loy is believed
to have knowledge of the same matters as former Sheriff John Monnet.

Jail administrator Marnee Raber:  Age 45, Redacted
Redacted, Redacted  , Illinois, Redacted        .  This individual possesses
knowledge of the investigation of the correctional officers by the Plaintiff.

State's Attorney Bryan Kibler:    The defense has contact
information.  State's Attorney Kibler possesses information concerning
the investigation of the correctional officers by the Plaintiff.  Otherwise
unknown.

Attorney Andy Martone:  Redacted                      ,  Redacted
Redacted              , Redacted      .  Has information pertaining to the
Plaintiff's investigation of the correctional officers.

FBI Agent Harvey Petry:  Age 46, FBI Bureau of Investigation
Northern District of Illinois.   Plaintiff provided this individual with
information pertaining to his investigation of the correctional officers.

Assistant US Attorney Kit Morrissey:    Redacted                ,
Redacted              Redacted      .  Plaintiff provided this individual
with information concerning his investigation of the misconduct of
correctional officers involving female inmates at the Effingham County
Jail.

Kelly Hodge, Illinois State Police, District 12, Redacted
Redacted      , Redacted                  , Redacted      .   Plaintiff
provided this individual with information pertaining to his investigation
of the correctional officers.

Correctional Officer Justin Finfrock:    The defense has contact
information.  This individual possesses information concerning his own
misconduct as alleged in the Complaint.

Correctional Officer Jeremy Kyle:    The defense has contact
information.  This individual possesses information concerning his own
misconduct as alleged in the Complaint.

Former inmates of Effingham County jail identified in reports
prepared by Plaintiff. See production compliance.

Jack Knauppel:   Office of Illinois Appellate Prosecutor.   See
materials in production compliance.

4

Tim Brown and Ryan Shoemaker:  Illinois State Police District 12,
Redacted                           , Redacted                  , Redacted-
Redacted.  These individuals were also provided with information concerning
the Plaintiff's investigation of the correctional officers.

4.    Identify each person not yet identified that is known or
believed to have knowledge concerning any of the matters or incidents
alleged in the Complaint, describing for each person identified the
material facts possessed by said person, and the source of such person's
knowledge (i.e., whether such person has first- or second-hand
knowledge and if second-hand, the identity of the person or document
from whom/which such facts were obtained).  Please also provide contact
information of each identified person.

ANSWER: Unknown at present.

5.    State whether any person, including but not limited to
Plaintiff and/or any claimant, has given any statements regarding the
incident, or the damages claimed to have resulted therefrom.  If so,
identify the person giving the statement, the person to whom the
statement was given, the date of the statement and whether it was
written, recorded or otherwise transcribed.  I identify anyone believed to
be in possession of said statements.

ANSWER:  None.

6.  State whether the Plaintiff and/or any claimant had any social media accounts, including but not limited to Facebook and Twitter, at the time of the incident, or at any time since.  For each such account, identify the type, name, and owner of the account.

ANSWER:

None at the time of the incident. After the incident, Plaintiff began account with Twitter, LinkedIn and Yammer.

7.  State whether Plaintiff had a cell phone(s) at any time between December 16, 2014 and the present.  If the answer is "yes, " provide each phone's number, whether it could access email, voicemail and text messages, the phone's cellular service provider (i.e., Verizon), and the current possessor of said phone.

ANSWER:

Yes.  Redacted    .  Has email voicemail and test functions. Verizon. Possessed by Plaintiff.

8.  For each year of the Plaintiff's employment with the Effingham County Sherriff's Office, state the title Plaintiff held and his immediate supervisor, if any.

ANSWER:

July 1996 to August 1997: Process server..

August 1997 to December 2002:  Patrol deputy.

December 2002 through 2012: Investigations.

2012 to December 2014:  Operations Sergeant.

Supervisors were: Sheriff Ron Meek, Sheriff John Monnet, Dean Biggs, Paul Kuhns, John Niccum and John Loy.


9.   Did Plaintiff ever receive performance evaluations, peer review, or any equivalent form of evaluation while employed by the Sheriff's Department?  If so, please describe the nature of the evaluation, its frequency, who conducted the reviews, and any merits or demerits noted in Plaintiff's job performance.  For each merit and demerit, please note the position you held at the time and the year of the given review (if known).

ANSWER:

Yes. This information would be in the possession of the Effingham County Sherriff's Office.


10.   Please describe the process and stated reason(s) for the re-institution of the operations sergeant position, how and why you were selected for this position, and how this compared to other hiring for other

7

sergeant positions within the Sheriff's Office. If you lack this knowledge, please identify who you believe possesses that information.

ANSWER:

The re-institution of the Operations Sergeant was to oversee the operations of the ancillary departments. I served the Sheriff in multiple capacities while he was in office including reviewing the jail, telecommunications, and court security operations prior to my promotion. As to why I can only speculate that it is because I did a good job for the Sheriff on whatever duties he assigned me. In the past Sergeant positions have been posted and have assigned as temporary assignments and then made permanent. Further clarification should be directed to Sheriff Monnet.

11. Please describe how Plaintiff's qualifications for the operations sergeant position compared to known previous operations sergeants, and with other known candidates for the position when Plaintiff was hired.

ANSWER: See answer to interrogatory 10.

12. Identify any local, state or federal law enforcement agency and/or governmental agency, or any employee of any such agency that you communicated with about the Effingham County Sheriff's Office or any Effingham County Sheriff's Office employee relative to any allegation

8

in your Complaint in this case. For any individual or entity identified, provide the last known contact information (i.e. address and phone number) for the same and the approximate time and method of communication (i.e., orally, in writing, etc.).

ANSWER:

See answer to Interrogatory No. 3.

13. Provide the complete factual basis and/or documents (if any) evidencing Defendant Niemann's:

a. Knowledge of Plaintiff's support of Sheriff Monnet, as alleged in ¶ 17(a) of the Complaint;

b. Knowledge of Plaintiff's Investigation(s) of the two correctional officers, as alleged in ¶ 17(a) of the Complaint;

c. Vendetta against Sheriff Monnet, as alleged in ¶ 17(a) of the Complaint;

d. Stated rationale to have the two investigated correctional officers reinstated;

e. Stated rationale to have Brockett removed from the operations sergeant position.

ANSWER:

a. My support of Sheriff Monnet was well known to everyone at the department and the other offices in the county including the Defendant.

b.  After State's Attorney Brian Kibler was briefed regarding the two correctional officers by myself and Sheriff Monnet, to which Kibler stated their falsification of documentation was criminal, the entire County Board was briefed on the situation. During the briefing, the subject was brought up regarding Correctional Officer Finfrock taking a female trustee in to the supply room and them both coming out with nothing. Board Member Karen Luchtefeld asked me if I had interviewed the female and at this time Chairman Nieman said that could open the county up to a lawsuit if anything inappropriate happened. The inmate in question was later located out of state and interviewed over the phone (see investigation documentation.)

-  Chairman Nieman, Vice Chairman Campbell, Sheriff Monnet, Jail Administrator Raber, FOP Representative Lieb all attended a meeting with the county's employment attorney Andrew Martone at the office of Martone and Hess in St. Louis, Mo  during which time, Martone produced legal decisions regarding the situation and wrote on the documents that to reinstate those correctional officers would increase the county's liability three-fold. Martone also state this to the group that was present.

-  As the allegations of the sexual misconduct were coming out, the statements I was taking were transcribed and faxed to Mr. Martone. Those allegations were forwarded to the County Board presumably by Martone and the board called a closed meeting to talk with Sheriff

10

Monnet about the allegations.  When he walked in to the meeting he was told by one of the board members (believed to be Rob Arnold but needs to be clarified with the Sheriff) that they had this situation all straightened out you guys had to go poking around in it and screwed it all up.

-   During a grievance hearing regarding the unit clarification petition that was filed, Nieman passed on a threat from FOP Jerry Lieb. According to Nieman, Lieb told him that if I did not stop my investigation I would be sued.  I told Chairman Nieman, I believed crimes were being committed and I would not stop the investigation at this time and I would welcome a lawsuit so that I could bring this situation out in to the public arena.

c.    This began after the incidents with the Correctional Officer Kyle and Finfrock.  Chairman Nieman and the board first put pressure on Chief Deputy Loy until they were able to force him to retire. They then recruited the assistance of Ted Heath to send a letter to the Edgar County Watchdog that insinuated Sheriff Monnet was stealing guns from the evidence locker and selling them to Habing Guns.  The letter went on to insinuate that Habing's suicide might have been murder alluding to the Sheriff being involved because he was the one who found him.  The board then paid approximately $14,000 to West and Company for an audit that found no irregularities other than a retiree was gifted his service weapon (a common practice at the time).  During this time or shortly thereafter, members of the board invited the Sheriff out to dinner

11

and provided him with a document to sign requesting his resignation (see included documentation).  The sheriff refused to sign the document or resign.

        d.     The only rationale would appear to be the Correctional Officers relationships with board members, considering the advice from Attorney Martone regarding the liability of bringing them back. Also, appears the board's relationship with Fraternal Order of Police representative Jerry Lieb.

        e.     My refusal to stop the investigation, my attempts to bring in the FBI to investigate along with my attempts to have the board themselves investigated by District 12 and the Appellate Prosecutors Office for interfering and obstructing my investigation.

      14.    State whether or not anyone, including but not limited to, any individual associated with Effingham County Sheriff's Office ever offered Plaintiff alternative employment leading up to and after cessation of funds for the operation's sergeant position.  If so, please describe the circumstances surrounding the offer, the nature of the offer itself, whether you considered it and whether you accepted or rejected it.

ANSWER:   No.

      15.    Describe in detail and itemize each element of damages you are claiming in this case (lost future income, emotional distress, damage

to reputation), including, but not limited to, the amount of each element of damages, the supporting data – such as wages, salary, income other economic benefits like advancement potential, medical bills, incurred by the incident, etc. – and the method of calculating each type of damages. To the extent any medical bills have been paid, please list the extent of payment, and by whom payment was made.

ANSWER:

Past loss of income: Compare income prior to and after the incident based upon income tax returns, assuming county salary of $55,000.00 did not increase.

2015: Loss of $28,000.00

2016: Loss of 24, 237.95

2017: Loss of $21,079.98

2018: Loss of $18,517.10

Future loss of income: It is anticipated that an economist or similar expert will be engaged to provide opinion testimony on future loss of income.

Loss of person benefits:

Current pension estimate is $1740 per month. Estimate of SLEP pension is $2600 per month. Loss is $860 per month or $10320 per year. 20 year loss is $206400. Present value not calculated.

Additionally, SLEP would have started at age 50. Current pension does not start until age 55. 5 year loss of SLEP pension is $$156000.00.

Emotional Distress: Plaintiff has suffered and continues to suffer depression and anxiety as a result of the indecent and the resulting loss of economic health. Amount of this claim will be presented at trial

Damage to Reputation: The community would assume that Plaintiff engaged in some wrongdoing causing his termination. The amount of this claim will be presented at trial.

16.    Identify each person known or believed to have knowledge concerning your alleged injuries and/or damages, and describe in detail the substance of each person's knowledge concerning those injuries and/or damages, and the source of each person's knowledge (i.e., whether such person has first-or second-hand knowledge and if second-hand, the identity of the person or document from whom/which such facts were obtained).

ANSWER:

Carol Brockett:  Age 51, Redacted
Redacted        , Redacted      .   Plaintiff's spouse who has personal knowledge of all elements of damages.

14

Clara Brockett: Age 25, Redacted                                    , Redacted_
Redacted . Plaintiff's daughter who has personal knowledge of all elements of damages.


Elthan Hingson: Age 29, Redacted                                    ,
Redacted         . Plaintiff's step-son who has personal knowledge of all elements of damages.


Harold Hampton: Age 80, Redacted
Redacted       , Redacted         . Plaintiff's father-in-law who has personal knowledge of all elements of damages.
Steve Gillum: Age 50's, Redacted                                    ,
Redacted         . Friend of Plaintiff who has personal knowledge of all elements of damages.


Teresa Gillum: Age 50's, Redacted                                   ,
Redacted         . Friend of Plaintiff who has personal knowledge of all elements of damages.


Linda Taylor: Age 53, Redacted
Redacted                     Plaintiff's sister-in-law. Has personal knowledge of all elements of damages.


Rick Kreke: Age 58, 103 Redacted
Redacted . Plaintiff's brother-in-law. Has personal knowledge of all elements of damages.


Darren Feldkamp: Age 53. 2Redacted       . Former co-worker. Has personal knowledge of all elements of damages.


Dustin Reardon: Age 40, address not known, 2Redacted-
Redacted Former co-worker. Has personal knowledge of all elements of damages.


Zachary Sparling: Age 25, Redacted       Redacted       . Friend. Has personal knowledge of all elements of damages.

Amanda Craig: Age 41, Redacted
Redacted Fiend. Has personal knowledge of all elements of damages.


17.    If you are claiming the alleged incident caused any kind of emotional harm, identify each health care provider (with name and address) who has examined, treated, or otherwise dealt with you at any time from five years prior to the date of the incident to the present. Indicate which of these are claimed to have provided health care or treatment for any physical, emotional or mental suffering resulting from the incident, and for each of those, state whether you are currently receiving health care or treatment.

ANSWER:

Dr. Sean Flynn, 512 N. Maple, Effingham, IL 62401. Has prescribed and continues to prescribe medication for depression and anxiety.


18.    Please identify all earnings and/or income received by Plaintiff since December 16, 2014. With respect to any earnings and/or income, please identify: (1) the source (i.e., SURS, SSA, or other source) of the earnings or income, (2) the specific monthly amount received from that source, (3) the time period in which the earnings or income were received from that source, and (4) for each year after 2014, the annual amount received from the source.

ANSWER:

16

See financial documents included in Plaintiff's production compliance.

19.     Identify each person or entity, if any, that claims a lien or right to payment or reimbursement of any money from the proceeds of any settlement or judgment in this litigation.

ANSWER:

    None other than personal loans to be repaid to:

    Steve and Teresa Gillum

    Harold Hampton

    Rick Kreke

    See answer to interrogatory 16 for contact information.

20.     Identify each contact and document relating to any application for unemployment or other benefits requested or received by you at any time since December 16, 2014.4  With respect to each contact, give (a) the name of the agency or other investigating unit, (b) identify every person with whom you had contact, (c) the date of such contact, (d) a brief description of the purpose and content of the contact, (e) whether such contact was in person, by telephone, or in writing, and (f) identification of witnesses to the contact.

ANSWER:

    See documentation provided in Plaintiff's production compliance.

17

21.    Identify each of claimant's employers for the period from January 1, 2014 to the present, giving dates of employment, the nature of the claimant's job, the wage or other payment basis, and the name of claimant's immediate supervisor.

ANSWER:

County of Effingham Sheriff's Department

McClain Investigations – Kevin McClain from January to March, 2015.

Affordable Home Improvements – Steve Gillum from May or June 2015 through August 28, 2015.

Patterson Technologies – Ryan Buschur, Michele Kreke from August 31, 2015 to present.

See financial documents included in Plaintiff's production compliance.

22.    Identify any and all actions you have taken to find employment since December 16, 2014. If there were periods where you were unable to work for any reason, please list them and describe why.

ANSWER:

See financial documents included in Plaintiff's production compliance. Plaintiff has been employed with Patterson Companies since August 31, 2015. Also, Plaintiff has self-employment. See income tax returns. Plaintiff has contacted many other potential employers and been

rejected or ignored. Plaintiff suspects but cannot yet substantiate that potential employers have received negative input from the County of Effingham.

23.    Identify the specific date(s) on which you believe either Defendant **manipulated or interfered** with the Sheriff's Office as described in Paragraph 6 of the Complaint, **gained the knowledge** alleged in Paragraph 7 of the Complaint, **asserted unwarranted power and authority** as described in Paragraph 10 of the Complaint, **exerted influence** as described in Paragraph 12 of the Complaint, and **issued instructions** as described in Paragraph 16 of the Complaint. Please note that all paragraph numbers are taken from Count I.

a.    For each date referenced (or even if not referenced), identify the act or inaction which you claim constituted the above-bolded acts of Defendant;

b.    All material facts that you rely upon to support your claim that the Defendants acted as alleged in the above-bolded manner, and;

c.    State the damage or injuries you claim to have sustained as a result of the alleged above-described acts.

d.    For each date referenced, identify the actor who engaged in the unlawful act or inaction, and the specific law that renders such action or inaction unlawful.

19

ANSWER:

See documentation provided in Plaintiff's [production compliance.


24.   Identify anyone who investigated the incident, and state whether any report of investigation was prepared.  If so, identify all of those in possess of said report.

ANSWER:

Only "investigation" of the indecent was by Plaintiff.  No "reports" were prepared other than communication from the Plaintiff to his attorney, as to which privilege is claimed.


25.   If Plaintiff or any expected witness was ever convicted of or pled guilty to a crime other than a traffic violation, then state the crime, the date of conviction, the court entering the judgment, and the sentence imposed.

ANSWER:

Plaintiff was convicted of DUI in 1985. Criminal records of witnesses not known.


26.   Pursuant to Illinois Supreme Court Rule 213(f)(1), identify each lay witness who will give the fact or lay opinion testimony.  For each such witness, identify the subjects on which the witness has knowledge

of facts or lay opinions, the opinions which the witness has, and the basis for each option.

ANSWER:

All lay witnesses identified in theses answers to interrogatories may testify as to their knowledge of material and relevant facts.

27.   Pursuant to Illinois Supreme Court Rule 213(f)(2), identify each independent expert witness who has expert testimony and opinions regarding this litigation.   With respect to such witness, identify the subjects on which the witness has such opinions, the opinions which such witness has, and the basis for each opinion.

ANSWER:

None have been identified except Dr, Sean Flynn who may testify as to his knowledge of the Plaintiff's physical and emotional health.

28.   Pursuant to Illinois Supreme Court Rule 213(f)(3), provide the name and address of each controlled expert or opinion witness who will offer any testimony in this litigation, and with respect to each such witness, state:

(a)   The qualifications of each witness, including a curriculum vitae and/or resume, if any.

(b)   The subject matter on which the witness is expected to testify;

21

(c)     The conclusions and/or opinions of the witness and the bases therefore;

(d)     Identify all publications, documents or written materials relied upon to any extent by the witness in rendering or basing any opinions;

(e)     Identify all publications of the witness; state which, if any, deal with the subject matter of Plaintiff's Complaint;

(f)     Whether there exist any written reports of the witness regarding this occurrence (and pursuant to Rule 213(g)(iii) provide all reports of any opinion witness);

(g)     Whether the witness has been retained by you to testify at trial;

(h)     The number of prior occasions on which the witness has been retained by you or you attorneys as an expert/opinion witness or consultant;

(i)     The number of prior occasions on which the witness has been retained by any plaintiff or plaintiff's attorney as an expert/opinion witness or consultant;

(j)     The number of times which the witness has been identified as an expert/opinion witness on behalf of a plaintiff or plaintiffs in the last ten years; for each such occasion, state the name of the case, the nature of the case, the jurisdiction, and the name of the plaintiff's attorney.

State whether said witness testified by deposition and/or in court;

(k)    The number of times which the witness has been identified as an expert/opinion witness on behalf of a defendant or defendants in the last ten years; for each such occasion, state the name of the case, the nature of the case, the jurisdiction, and the name of the defendant's attorney. State whether said witness testified by deposition and/or in court;

(l)    Identify, giving the name of the case, the jurisdiction of the case, and the attorney who retained him or her, each case in which the witness has offered testimony, by report, deposition, or trial testimony, concerning subjects similar to Plaintiff's Complaint;

(m)    State the annual income generated by the witness in offering expert/opinion testimony for the last ten (10) years.

(n)    State the hourly or other charges of the witness for work performed on this case; state the number of hours expended on the case, and the total amount billed or owing to date; and

(o)    State whether the witness has ever advertised or been advertised, either individually through a group (i.e. TASA, etc.), the availability of his or her services as an expert

23

witness; if so, state the dates during which such advertising took place, and identity of each entity (i.e., Chicago Daily Law Bulletin, etc.) where such advertisements were placed.

ANSWER:

No controlled expert witnesses have been engaged to date.

29.    Identify each and every rule, regulation, bylaw, protocol, standard, printed matter, publication or writing of whatsoever nature, by any professional group, association, credentialing body, accrediting authority or government agency which you or your attorney may use at trial in the prosecution of this lawsuit.

ANSWER:

None known at present except as identified in the Complaint.

30.    Identify any statements, information and documents known to you and requested by any of the above Interrogatories or by a request to produce documents or other tangible items which you claim to be work product or subject to a common law or statutory privilege, and with respect to each, state the claim expressly and state a description of the nature of the documents, communications or things not produced or disclosed and the exact privilege which is being claimed.

24

ANSWER:

None other than communications between Plaintiff and his attorney and the attorney's agents as to which privilege is claimed.

Thad F. Brockett, Plaintiff

by____/s/ Michael J. Meyer____
Michael J. Meyer
His Attorney

**VERIFICATION**

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct.

Dated this ___1___ day of July, 2019.

/s/ Thad F. Brocket
Thad F. Brocket

25

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the

Code of Civil Procedure, the undersigned certifies that this instrument was

served upon:

> Keith E. Fruehling
> Heyl, Royster, Voelker & Allen
> 301 N. Neil Street
> Suite 550
> P.O. Box 1190
> Champaign, IL 61824-1190

by email  to kfruehling@heylroyster.com on the ____1st____ day of  July, 2019.


/s/ Michael J. Meyer
Michael J. Meyer


Michael J. Meyer
Attorney at Law
404 South Fourth Street
P. O. Box 129
Effingham, IL  62401
Telephone:  217-347-0791
Fax:  217-347-5757
Email:  mjmeyer@consolidated.net

26

1

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT
EFFINGHAM COUNTY
STATE OF ILLINOIS

THAD F. BROCKETT,
          Plaintiff,
     -vs-            No.   15-L-52
THE COUNTY OF EFFINGHAM,
ILLINOIS, a body politic
and corporate, and JIM
NIEMANN,
         Defendants,

and

ROB ARNOLD, DAVID CAMPBELL,
MIKE DEPOISTER, LLOYD FOSTER,
KAREN LUCHTEFELD, DOUG MCCAIN,
JEFF SIMPSON, JOE THOELE,
and DAVID MAHON,
       Respondents in
        Discovery.

COPY

DISCOVERY DEPOSITION OF DAVID MAHON
MARCH 17, 2016

Gary J. Maninfior
CSR 84-573

M A N I N F I O R   C O U R T   R E P O R T I N G

CERTIFIED SHORTHAND REPORTERS
P.O. BOX 1036
Mattoon, Illinois 61938
(800)346-2986

Exhibit D

1

## STIPULATION

2

3

4

5

6

7    IT IS HEREBY STIPULATED AND AGREED by and

8  between all parties to this suit, through their

9  respective attorneys that the discovery deposition

10  of DAVID MAHON may be taken for discovery purposes

11  pursuant to the provisions of the code of Civil

12  procedure and Rules of the Supreme Court in the

13  Meyer Law Offices, 404 South 4th Street,

14  Effingham, Illinois on the 17th day of March,

15  2016,  before Gary J. Maninfior, Certified

16  Shorthand Reporter and Notary Public, and upon

17  oral interrogatories only.

18    This deposition is taken for discovery

19  purposes and the same of any part thereof may be

20  introduced into evidence for any purpose for which

21  such depositions are rendered competent by Statute

22  or Rule of Court and without foundation proof.

23

24    **GARY J. MANINFIOR**

25    **Certified Shorthand Reporter**

3

**APPEARANCES**

Representing the Plaintiff:
    Meyer Law
    Attorneys at Law
    404 South 4th
    Effingham, IL   62401
    BY:  Mr. Michael J. Meyer

Representing the Defendants:
    Heyl, Royster, Voelker & Allen
    Attorneys at Law
    P. O. Box   129
    Urbana, IL   61808-0129
    BY:  Mr. Keith E. Fruehling

**INDEX**

EXAMINATION CONDUCTED BY:            PAGE:

    Mr. Meyer...................4

**EXHIBITS**

4

1                    **DAVID MAHON**,

2      a witness having been first duly sworn upon his

3      oath testified as follows:

4      *EXAMINATION CONDUCTED*

5      *BY: MR. MEYER*

6                    MR. FRUEHLING:  I would like to make a

7      quick statement here for record, Mike.

8                    MR. MEYER:  I was going to do it.

9                    MR. FRUEHLING:  Oh, I'm sorry.

10                   MR. MEYER:  Why don't I do it and you

11     correct me if I'm wrong.

12                   MR. FRUEHLING:  Okay, that's fair.

13                   MR. MEYER:  We are here today for a

14     discovery deposition of one of the Respondents in

15     Discovery in this case, Sheriff Dave, or is it

16     David?

17          A.      It doesn't matter.

18                   MR. MEYER:  Dave Mahon.  We have

19     agreed that the scope of this deposition will be

20     limited to the issue raised by the Motion to

21     Dismiss filed by the defendants to with laches,

22     l-a-c-h-e-s and more specifically on the issue of

23     prejudice to the county resulting from the filing

24     of this lawsuit allegedly in an untimely fashion.

25     Is that stated  or --

5

1            MR. FRUEHLING:  That's pretty good,
2      yeah, to the defendants that is exactly right.
3            MR. MEYER:  So this won't take very
4      long.  That's good news for you.
5      A.      Good news.
6      Q.      State your name, please.
7      A.      My name is David Mahon, M-a-h-o-n.
8      Q.      And you are currently sheriff of
9      Effingham County, Illinois?
10     A.      Yes, sir.
11     Q.      Sheriff, I would like to ask you as I
12     go through this process if you don't hear me or if
13     you don't understand my question will you tell me
14     that before you answer, otherwise I'll assume you
15     heard and understood the question?
16     A.      Yes, sir.
17     Q.      Thank you.
18             Did you take office December 1, 2014?
19     A.      Yes, sir, I did.
20     Q.      Handing you what has been marked as
21     Mahon Deposition Exhibit Number 1.
22             (At this point the Court Reporter
23     marked for purposes of identification Mahon
24     Deposition Exhibit Number 1, after which the
25     following proceedings were conducted:)

1          MR. MEYER:  Sheriff, is that an

2    accurate copy of a letter that you provided to

3    Thad Brockett on December 16, 2014?

4          A.     I'm sorry, you said on the 16th?

5          MR. MEYER:  Yes, sir.

6          A.     Yes, sir, it is.

7          Q.     Where did that take place?  Where were

8    you when you handed Thad Brockett that letter?

9          A.     It was in my office.

10         Q.     At the sheriff's department?

11         A.     Yes, sir at the sheriff's department.

12         Q.     About what time of day was that?

13         A.     It was in the morning and I'm guessing

14   it was about 8:30 or 9:00.

15         Q.     Now this letter states in part "The

16   Effingham County Board has decided to eliminate

17   the funding for Operations Sergeant".  Do you see

18   that part there?

19         A.     Yes.

20         Q.     Where did you learn that information?

21   From whom did you learn that information?

22         A.     On the night before, on the 15th, the

23   county board had their regular county board

24   meeting and it started at 4:00, I don't know

25   exactly what time the budget was passed, but they

1   passed the budget for the Effingham County

2   Sheriff's Office.

3        Q.     Were you present at that time?

4        A.     Yes, sir, I was.

5        Q.     So you were aware on the 15th the

6   position of Operations Sergeant was not being

7   funded in the budget?

8        A.     That night, yes.  That afternoon.

9        Q.     Was there a line item in the budget for

10  Operations Sergeant, if you know?

11       A.     I don't know.  I think there was, but I

12  don't know that for sure.

13       Q.     In any event you would agree that the

14  effect of this letter, which has been marked as

15  Exhibit 1 was to terminate Thad Brockett's

16  employment by the Sheriff's Department in the

17  county of Effingham?

18            MR. FRUEHLING:  Objection, just let me

19  level the objection for the record.  I think that

20  misstates his testimony and the evidence.  I think

21  he was informing him that his position had been

22  eliminated and therefore his employment would no

23  longer be available as opposed to terminating his

24  employment.  And I think although in regular

25  semantics that may not be as significant, and I'm

8

1   not trying to split hairs.  I think in this

2   context it is significant, that's all.

3              MR. MEYER:  Let me just ask a

4   different question.

5              Is it true as a result of the

6   defunding of the position of Operations Sergeant

7   by the county board that Thad Brockett was no

8   longer an employee of the sheriff's department for

9   the county of Effingham?

10       A.      That was correct.  I informed Sergeant

11  Brockett that his position was eliminated and I

12  had used that word several times that day.

13             MR. MEYER:  "Eliminated"?

14       A.      Yes, sir.

15       Q.      Was Thad Brockett offered another

16  position with the sheriff's department?

17             MR. FRUEHLING:  Objection, vague.  You

18  mean that morning?

19             MR. MEYER:  Yes, at that time.

20       A.      At that time, no, sir.

21       Q.      Was he subsequently offered another

22  position with the sheriff's department.

23       A.      Since that time, no, sir, he was not.

24       Q.      So he has never been offered another

25  position with the sheriff's department on or after

1    December 16, 2014, is that right?

2        A.    That is correct.

3        Q.    Has the position of Operations Sergeant

4    been filled by another individual since December

5    16, 2014?

6            MR. FRUEHLING:  Object to foundation.

7            MR. MEYER:  Explain that to me.

8            MR. FRUEHLING:  Sure.  Has the

9    position been filled?  I just wanted to make it

10   clear that we have already established that the

11   position was eliminated and there has never been a

12   re-establishment that the position was reinstated,

13   therefore --

14           MR. MEYER:  Okay, I'll withdraw that

15   question.

16           MR. FRUEHLING:  Okay, thank you.

17           MR. MEYER:  Has the position of

18   Operations Sergeant been recreated or reinstated

19   since December 16, 2014?

20       A.    No, sir, it has not.

21       Q.    So since December 16, 2014 no person

22   has replaced Thad Brockett as Operations Sergeant,

23   is that correct?

24       A.    Yes, that is correct.

25           MR. FRUEHLING:  Now I just want to

1     make it clear for the record there, Mike, that

2     this is for your benefit, the way you have asked

3     that question is ambiguous, so the question is

4     "Has anyone filed that position"? He already told

5     you that there is no position to be filled, but

6     the question is still vague as to whether to the

7     extent that Mr. Brockett was engaging in

8     administrative functions whether those things have

9     been handled by other officers who have remained

10     in the position. I just want to make it clear

11     that that's a distinction in significance as well.

12            MR. MEYER: Have the duties previously

13     performed by Thad Brockett before December 16,

14     2014 been assumed by another employee or employees

15     of the sheriff's department?

16     A.     I guess the way to answer that would be

17     to explain a little bit that myself and Chief

18     Deputy Paul Kuhns are handling the administrative

19     duties of the department since I took office

20     December 1st. Sergeant Brockett, I came into the

21     department December 1st and I had never been the

22     sheriff before, so I don't know exactly all the

23     duties that Sergeant Brockett was performing. I

24     know some of the duties.

25            So I guess I can't honestly tell you

11

1    that all the duties are being done that he did
2    before because he didn't work there long enough in
3    that position that I could have a good handle on
4    what all duties he was assigned prior to me being
5    there.  I don't want to evade the question, but I
6    don't want to answer wrong.

7        Q.    Let me ask another question:  After
8    December 16, 2015 were any individuals hired by
9    the sheriff's department or the county to assume
10   the duties that Sergeant Brockett had previously
11   performed?

12       A.    Not to my knowledge, no, nobody  -- we
13   didn't hire anybody that had done those duties
14   that he was doing.  Other than, I, you know, came
15   in December 1st and assigned Chief Deputy Paul
16   Kuhns as my chief deputy.

17       Q.    After December 16, 2014 was any
18   employee or employees of the sheriff's department
19   given an increase in pay in order to perform in
20   conjunction with being assigned to perform the
21   duties formerly performed by Thad Brockett?

22       A.    No, sir.

23       Q.    Since December 16, 2014 has any
24   employee been employed by the sheriff's department
25   of Effingham County left the sheriff's department,

1     other than Sheriff Monett and Sergeant Brockett?

2          A.    No.

3          Q.    Okay.

4          A.    Yeah -- no.

5          Q.    Whether they were fired or quit or

6     retired or whatever.

7          A.    No, I don't recall anybody leaving

8     since that time.

9               MR. MEYER:   Okay, thank you.

10              Has anybody been assigned from the

11    sheriff's department to the Drug Task Force since

12    December 16, 2014?

13         A.    Yes, sir.

14         Q.    Who is that?

15         A.    Bill Friese.

16         Q.    When was he assigned to the drug task

17    force, approximately.

18         A.    I think it was January 1st of 2016,

19    this year.

20         Q.    Is he still encased with the task

21    force?

22         A.    Yes, sir.

23         Q.    Is any part of his salary or wage paid

24    by Effingham County since he has been assigned to

25    the task force?

1       A.      Yes, sir, it is.

2       Q.      How does that work?

3       A.      He is a corporal with the sheriff's

4   department and there is a grant, a small grant of

5   $2,000 dollars a month that supplements his salary

6   to the sheriff's department.  They actually, at

7   the end of when he works a month, at the end of

8   the month we get a check from the Southeastern

9   Illinois Drug Task Force for $2,000.  So through

10  the course of the year $24,000 of his salary is

11  paid for by the grant.

12      Q.      What was his job position before he

13  went to the task force?

14      A.      Patrol corporal.

15      Q.      Was anyone hired to replace that

16  individual as a patrol deputy or corporal?

17      A.      Yes, sir.

18      Q.      And who was that?

19      A.      That would be John Long, L-o-n-g.

20      Q.      When was he hired?

21      A.      I believe his first day was January 3rd

22  of 2016.

23      Q.      Did he assume the duties formally held

24  by Deputy Friese?

25      A.      No, sir, he did not.  He did part of

14

1    that. Deputy Friese was a corporal, so he had

2    some supervisory responsibility within the patrol

3    ranks and Deputy Long was hired as a patrol

4    deputy. He does not have any supervisory

5    function. It's, Corporal Friese had his, was also

6    a deputy, full patrol powers, but he also had some

7    supervisory responsibility.

8        Q.    Did someone assume Corporal Friese's

9    supervisory duties after he left?

10       A.    We absorbed that for a little while,

11   and then we have since had a promotion to, we

12   promoted one of the -- actually that is not

13   correct. We did not replace him with that. We

14   absorbed that.

15           Let me see here, for a while the

16   sergeant took over that position, took over that

17   responsibility, and then we did have a promotion,

18   we promoted two people, not just one, we promoted

19   two people to corporal, and one of them was to

20   take over Corporal Friese's position and the other

21   one was to take over the other corporal position,

22   which we had had vacant for a year.

23       Q.    Now these personnel changes that

24   involved Corporal Friese and Deputy Long had

25   nothing to do with the fact that Thad Brockett was

1     no longer with the department, is that correct?

2         A.    That's correct.

3         Q.    Since December 16, 2014, other than

4     Deputy Long has anyone else been hired by the

5     sheriff's department of Effingham County?

6         A.    You mean as a road deputy or --

7         MR. MEYER:  In any capacity.

8         A.    Yes, they have.

9         Q.    Who would that be?

10        A.    We hired a correctional officer in the

11    back.  We actually, he went from part-time, we

12    hired him full-time, so when you say "hire" I'm

13    assuming you mean in a new position.

14        Q.    Well, I would like to include in that

15    question part-time and full-time, but thank you

16    for that.

17        A.    Okay, he did go from part-time to

18    full-time and also I would like to add that Deputy

19    Long was part-time, and when I said we hired him,

20    he went from part-time to full-time.

21        Q.    Anyone else that you haven't already

22    mentioned that has gone from part-time to

23    full-time or been hired by the sheriff's

24    department since December 15, 2014, in any

25    capacity?

16

1      A.      Yes, we had a dispatcher that went from

2   part-time to full-time also.

3      Q.      Anybody else?

4      A.      I believe that's it.

5      Q.      Okay, now the fact that the dispatcher

6   and the other individual who was a correctional

7   officer went from part-time to full-time had

8   nothing to do with the fact that Thad Brockett was

9   no longer employed by the sheriff's department,

10  is that correct?

11     A.      That is correct.

12             Can I add something?

13             MR. MEYER:  Sure.

14     A.      I usually don't do this in depositions,

15  but when we brought in the part about going from

16  went from part-time to full-time we did have a

17  dispatcher that went from full-time to part-time.

18  So when you asked me if we had anybody else that

19  left that would fall into that category.  I just

20  wanted to make that clear.

21             MR. MEYER:  Thank you, I appreciate

22  it.  And that person going from full-time to

23  part-time had nothing to do with Thad Brockett no

24  longer being in the department, is that correct?

25     A.      That's correct, sir.

1    Q.    Is it true that after Thad Brockett was

2  eliminated, and his position was eliminated from

3  the sheriff's department in Effingham County on

4  December 16, 2014 that Thad Brockett was never

5  replaced?

6        MR. FRUEHLING:  I'll object to the --

7  Well, I'll just object, for this volley I'll just

8  object to the form of the question.  When you say

9  Thad Brockett wasn't replaced, are you saying, and

10 we tried to make this distinction earlier for the

11 record that, was his position reinstated and then

12 filled or was Thad Brockett -- and outside of that

13 context I'm not sure that it is relevant whether

14 a person named Thad Brockett was replaced.  So

15 maybe you can rephrase your question.

16        MR. MEYER:  Let me try to do it again,

17 and let's make it simple.

18    A.    Thank you.

19        MR. MEYER:  Not for you but for me.

20 Maybe it was too complex of a question that I

21 don't even understand it.  It's possible.

22        Anyway, here comes another question:

23 After December 16, 2014 was any person or persons

24 hired by the sheriff's department to replace Thad

25 Brockett?

1        MR. FRUEHLING:  The same objection.

2   If you're asking him in the context of replacing

3   him as an Operations Sergeant position then I

4   think that is a fair question.  Otherwise, I don't

5   think it has any relevance to the limited issue

6   that are here for today or even if we were to get

7   further in the case that that would be a relevant

8   issue to the issues in the case.

9        MR. MEYER:  Well, we know that no one

10  replaced him as Operations Sergeant.  I think we

11  already went through that, didn't we?

12       A.    Yes, sir.

13       Q.    So the next question, which Keith

14  doesn't like, is:  Was Thad Brockett replaced by

15  any individual after December 16, 2014 in terms of

16  assuming the duties that Thad Brockett previously

17  had performed regardless of the title?

18       MR. FRUEHLING:  I actually think

19  that's, a fair question.  If you could read that

20  back so he could hear it one more time, because I

21  thought it was good but I want to make sure he was

22  able to hear it.

23            (At this point in the proceedings the

24  Court Reporter read aloud the aforesaid question,

25  after which the following proceedings were

1    conducted:)

2        A.        We hired a new deputy and that was a

3    hire so our man power did increase by one person.

4             MR. FRUEHLING:  The question was just

5    whether they hired somebody to replace Mr.

6    Brockett in the sense they were going to do his

7    duties, is that fair?

8             MR. MEYER:  Yes.

9        A.        That is correct.

10            MR. FRUEHLING:  You did not hire

11   someone to do --

12       A.        We did not hire anyone in that position

13   and that capacity to take on the duties that

14   Sergeant Brockett was doing at that time.

15       Q.        And the deputy that you hired was John

16   Long?

17       A.        Yes, sir.

18       Q.        And not somebody else, right?

19       A.        Somebody else --

20       Q.        Because we already went through that

21   and you said --

22       A.        That's the same John Long that we took

23   from part-time to full-time.  I say "hire" him

24   because he wasn't on our roster, and now we are

25   paying him as a full-time person.

20

1          MR. MEYER:   No other questions.

2          MR. FRUEHLING:   I don't have any

3   questions either.  And we will waive the signature

4   for today.

21

CERTIFIED SHORTHAND REPORTER'S CERTIFICATION

I, GARY J. MANINFIOR, Certified Shorthand Reporter and Notary Public of the State of Illinois, do hereby certify that DAVID MAHON came before me on the 17th day of March, A.D., 2016 and swore before me to testify to the truth, the whole truth and nothing but the truth regarding his knowledge touching upon the matter in controversy.

I do further certify that I did take stenographic notes of the questions propounded to said witness and his answers thereto, and that said notes were reduced to typewritten form under my direction and supervision.

I do further certify that the attached and foregoing is a true, correct, and complete copy of my notes and that said testimony is now herewith returned.

I do further certify that the said deposition was taken at the Meyer Law Offices, 404 South 4th, Effingham, Illinios.

I do further certify that I am not related in any way to any of the parties involved in this action and have no interest in the outcome thereof.

Dated at Mattoon, Illinois, this 21st day of  March, A.D., 2016, and given under my hand and seal.

Gary J. Maninfior
Certified Shorthand Reporter

**D. Mahon**      CondenseIt™      **$2,000 – funding**

**$2,000** [2]  13:5
13:9
**$24,000** [1]  13:10
**-vs** [1]  1:4
**00** [2]  6:14  6:24
**1** [4]  5:18  5:21
5:24  7:15
**1036** [1] 1:20
**129** [1]  3:8
**15** [1]  15:24
**15-L-52** [1]  1:4
**15th** [2] 6:22  7:5
**16** [14]  6:3  9:1
9:5  9:19  9:21
10:13  11:8  11:17
11:23  12:12  15:3
17:4  17:23  18:15
**16th** [1] 6:4
**17** [1]  1:15
**17th** [2] 2:14  21:4
**1st** [4]  10:20  10:21
11:15  12:18
**2014** [15]  5:18
6:3  9:1  9:5
9:19  9:21  10:14
11:17  11:23  12:12
15:3  15:24  17:4
17:23  18:15
**2015** [1] 11:8
**2016** [6] 1:15  2:15
12:18  13:22  21:4
21:20
**21st** [1] 21:19
**30** [1]  6:14
**346-2986** [1]  1:21
**3rd** [1]  13:21
**4** [2]  3:12  6:24
**404** [3]  2:13  3:5
21:14
**4th** [3]  2:13  3:5
21:14
**61808-0129** [1]
3:9
**61938** [1]  1:20
**62401** [1]  3:5
**8** [1]  6:14
**800** [1]  1:21
**84-573** [1]  1:16
**9** [1]  6:14
**A.D** [2]  21:4  21:20
**able** [1]  18:22
**absorbed** [2]  14:10
14:14
**accurate** [1]  6:2
**action** [1]  21:17
**add** [2]  15:18  16:12
**administrative** [2]
10:8  10:18
**aforesaid** [1]  18:24
**afternoon** [1]  7:8
**again** [1]  17:16
**agree** [1] 7:13
**agreed** [2]  2:7

**4:19**
**allegedly** [1]  4:24
**Allen** [1]  3:7
**aloud** [1]  18:24
**ambiguous** [1]  10:3
**answer** [3]  5:14
10:16  11:6
**answers** [1]  21:8
**Anyway** [1]  17:22
**APPEARANCES** [1]
3:1
**appreciate** [1]  16:21
**ARNOLD** [1]  1:9
**assigned** [6]  11:4
11:15  11:20  12:10
12:16  12:24
**assume** [4]  5:14
11:9  13:23  14:8
**assumed** [1]  10:14
**assuming** [3]  15:13
18:16
**attached** [1]  21:10
**attorneys** [3]  2:9
3:4  3:8
**available** [1]  7:23
**aware** [1]  7:5
**benefit** [1]  10:2
**between** [1]  2:8
**Bill** [1]  12:15
**bit** [1]  10:17
**board** [4]  6:16
6:23  6:23  8:7
**body** [1] 1:5
**Box** [2]  1:20  3:8
**Brockett** [27]  1:3
6:3  6:8  8:7
8:11  8:15  9:22
10:7  10:13  10:20
10:23  11:10  11:21
12:1  14:25  16:8
16:23  17:1  17:4
17:9  17:12  17:14
17:25  18:14  18:16
19:6  19:14
**Brockett's** [1]  7:15
**brought** [1]  16:15
**budget** [4]  6:25
7:1  7:7  7:9
**C** [1]  1:18
**CAMPBELL** [1]
1:9
**capacity** [3]  15:7
15:25  19:13
**case** [3]  4:15  18:7
18:8
**category** [1]  16:19
**CERTIFICATION** [1]
21:1
**Certified** [6]  1:19
2:15  2:25  21:1
21:2  21:24
**certify** [5]  21:3
21:7  21:10  21:13
21:16

**changes** [1]  14:23
**check** [1]  13:8
**chief** [3] 10:17  11:15
11:16
**CIRCUIT** [2]  1:1
1:1
**Civil** [1] 2:11
**clear** [4] 9:10  10:1
10:10  16:20
**code** [1]  2:11
**competent** [1]  2:21
**complete** [1]  21:11
**complex** [1]  17:20
**conducted** [4]  3:11
4:4  5:25  19:1
**conjunction** [1] 11:20
**context** [3]  8:2
17:13  18:2
**controversy** [1] 21:5
**copy** [2] 6:2  21:11
**corporal** [10]  13:3
13:14  13:16  14:1
14:5  14:8  14:19
14:20  14:21  14:24
**corporate** [1]  1:6
**correct** [14]  4:11
8:10  9:2  9:23
9:24  14:13  15:1
15:2  16:10  16:11
16:24  16:25  19:9
21:11
**correctional** [2] 15:10
16:6
**county** [16]  1:1
1:5  4:23  5:9
6:16  6:23  6:23
7:1  7:17  8:7
8:9  11:9  11:25
12:24  15:5  17:3
**course** [1]  13:10
**Court** [5]  1:1
2:12  2:22  5:22
18:24
**CSR** [1]  1:16
**Dated** [1]  21:19
**Dave** [2] 4:15  4:18
**David** [8]  1:9
1:11  1:14  2:10
4:1  4:16  5:7
21:3
**December** [19]  5:18
6:3  9:1  9:4
9:19  9:21  10:13
10:20  10:21  11:8
11:15  11:17  11:23
12:12  15:3  15:24
17:4  17:23  18:15
**decided** [1]  6:16
**defendants** [4]  1:7
3:7  4:21  5:2
**defunding** [1]  8:6
**department** [24] 6:10
6:11  7:16  8:8
8:16  8:22  8:25
10:15  10:19  10:21
11:9  11:18  11:24

**11:25  12:11  13:4
13:6  15:1  15:5
15:24  16:9  16:24
17:3  17:24**
**DEPOISTER** [1]
1:9
**deposition** [8]  1:14
2:9  2:18  4:14
4:19  5:21  5:24
21:14
**depositions** [2] 2:21
16:14
**deputy** [15]  10:18
11:15  11:16  13:16
13:24  14:1  14:3
14:4  14:6  14:24
15:4  15:6  15:18
19:2  19:15
**different** [1]  8:4
**direction** [1]  21:9
**discovery** [7]  1:12
1:14  2:9  2:10
2:18  4:14  4:15
**Dismiss** [1]  4:21
**dispatcher** [3]  16:1
16:5  16:17
**distinction** [2]  10:11
17:10
**doesn't** [2]  4:17
18:14
**dollars** [1]  13:5
**done** [2] 11:1  11:13
**DOUG** [1]  1:10
**drug** [3] 12:11  12:16
13:9
**duly** [1] 4:2
**duties** [14]  10:12
10:19  10:23  10:24
11:1  11:4  11:10
11:13  11:21  13:23
14:9  18:16  19:7
19:13
**E** [2]  1:18  3:9
**effect** [1]  7:14
**Effingham** [14]  1:1
1:5  2:14  3:5
5:9  6:16  7:1
7:17  8:9  11:25
12:24  15:5  17:3
21:14
**either** [1]  20:3
**eliminate** [1]  6:16
**eliminated** [6]  7:22
8:11  8:13  9:11
17:2  17:2
**employed** [2]  11:24
16:9
**employee** [4]  8:8
10:14  11:18  11:24
**employees** [2]  10:14
11:18
**employment** [3]
7:16  7:22  7:24
**encased** [1]  12:20
**end** [2]  13:7  13:7
**engaging** [1]  10:7

**established** [1] 9:10
**evade** [1]  11:5
**event** [1]  7:13
**evidence** [2]  2:20
7:20
**exactly** [3]  5:2
6:25  10:22
**EXAMINATION** [2]
3:11  4:4
**Exhibit** [3]  5:21
5:24  7:15
**EXHIBITS** [1] 3:13
**explain** [2]  9:7
10:17
**extent** [1]  10:7
**F** [2]  1:3  1:18
**fact** [3] 14:25  16:5
16:8
**fair** [4]  4:12  18:4
18:19  19:7
**fall** [1]  16:19
**fashion** [1]  4:24
**filed** [2] 4:21  10:4
**filing** [1]  4:23
**filled** [4]  9:4
9:9  10:5  17:12
**fired** [1] 12:5
**first** [2]  4:2  13:21
**following** [2]  5:25
18:25
**follows** [1]  4:3
**force** [6] 12:11  12:17
12:21  12:25  13:9
13:13
**foregoing** [1]  21:11
**form** [2] 17:8  21:8
**formally** [1]  13:23
**formerly** [1]  11:21
**FOSTER** [1]  1:9
**foundation** [2]  2:22
9:6
**FOURTH** [1]  1:1
**Friese** [5]  12:15
13:24  14:1  14:5
14:24
**Friese's** [2]  14:8
14:20
**Fruehling** [17]  3:9
4:6  4:9  4:12
5:1  7:18  8:17
9:6  9:8  9:16
9:25  17:6  18:1
18:18  19:4  19:10
20:2
**full** [1]  14:6
**full-time** [12]  15:12
15:15  15:18  15:20
15:23  16:2  16:7
16:16  16:17  16:22
19:23  19:25
**function** [1]  14:5
**functions** [1]  10:8
**funded** [1]  7:7
**funding** [1]  6:17

**D. Mahon**                                    **Condenselt™**                                    **G - REPORTERS**

G [1]    1:18
Gary [5] 1:16    2:15
  2:24    21:2    21:23
given [2]    11:19
  21:20
gone [1] 15:22
good [5] 5:1    5:4
  5:5    11:3    18:21
grant [3] 13:4    13:4
  13:11
guess [2]    10:16
  10:25
guessing [1]    6:13
hairs [1] 8:1
hand [1] 21:20
handed [1]    6:8
Handing [1]    5:20
handle [1]    11:3
handled [1]    10:9
handling [1]    10:18
hear [3] 5:12    18:20
  18:22
heard [1]    5:15
held [1] 13:23
hereby [2]    2:7
  21:3
herewith [1]    21:12
Heyl [1] 3:7
hire [6]    11:13    15:12
  19:3    19:10    19:12
  19:23
hired [13]    11:8
  13:15    13:20    14:3
  15:8    15:10    15:12
  15:19    15:23    17:24
  19:2    19:5    19:15
honestly [1]    10:25
identification [1]
  5:23
IL [2]    3:5    3:9
Illinios [1]    21:14
Illinois [8]    1:2
  1:5    1:20    2:14
  5:9    13:9    21:3
  21:19
include [1]    15:14
increase [1]    11:19
  19:3
INDEX [1]    3:10
individual [4]    9:4
  13:16    16:6    18:15
individuals [1] 11:8
information [2] 6:20
  6:24
informed [1]    8:10
informing [1]    7:21
interest [1]    21:17
interrogatories [1]
  2:17
introduced [1]    2:20
involved [2]    14:24
  21:17
issue [4] 4:20    4:22
  18:5    18:8

issues [1]    18:8
item [1] 7:9
J [6]    1:16    2:15
  2:24    3:6    21:2
  21:23
January [2]    12:18
  13:21
JEFF [1] 1:10
JIM [1] 1:6
job [1]    13:12
JOE [1] 1:10
John [2] 13:19    19:15
  19:22
JUDICIAL [1]    1:1
KAREN [1]    1:10
Keith [2]    3:9
  18:13
knowledge [2]    11:12
  21:5
Kuhns [2]    10:18
  11:16
l-a-c-h-e-s [1]    4:22
L-o-n-g [1]    13:19
laches [1]    4:21
Law [5] 2:13    3:4
  3:4    3:8    21:14
lawsuit [1]    4:24
learn [2] 6:20    6:21
leaving [1]    12:7
left [3]    11:25    14:9
  16:19
letter [4] 6:2    6:8
  6:15    7:14
level [1] 7:19
limited [2]    4:20
  18:5
line [1]  7:9
LLOYD [1]    1:9
longer [5]    7:23
  8:8    15:1    16:9
  16:24
LUCHTEFELD [1]
  1:10
M [1]    1:18
M-a-h-o-n [1]    5:7
Mahon [9]    1:11
  1:14    2:10    4:1
  4:18    5:7    5:21
  5:23    21:3
man [1]  19:3
Maninfior [5]    1:16
  2:15    2:24    21:2
  21:23
March [4]    1:15
  2:14    21:4    21:20
marked [3]    5:20
  5:23    7:14
matter [2]    4:17
  21:5
Mattoon [2]    1:20
  21:19
may [3] 2:10    2:19
  7:25
MCCAIN [1]    1:10

mean [3] 8:18    15:6
  15:13
meeting [1]    6:24
mentioned [1]    15:22
Meyer [29]    2:13
  3:4    3:6    3:12
  4:5    4:8    4:10
  4:13    4:18    5:3
  6:1    6:5    8:3
  8:13    8:19    9:7
  9:14    9:17    10:12
  12:9    15:7    16:13
  16:21    17:16    17:19
  18:9    19:8    20:1
  21:14
Michael [1]    3:6
Mike [3] 1:9    4:7
  10:1
misstates [1]    7:20
Monett [1]    12:1
month [3]    13:5
  13:7    13:8
morning [2]    6:13
  8:18
Motion [1]    4:20
N [3]    1:18    1:18
  1:18
name [2] 5:6    5:7
named [1]    17:14
never [6]    8:24
  9:11    10:21    17:4
new [2]    15:13    19:2
news [2] 5:4    5:5
next [1]    18:13
NIEMANN [1]    1:6
night [2] 6:22    7:8
nobody [1]    11:12
Notary [2]    2:16
  21:3
notes [3] 21:7    21:8
  21:11
nothing [1]    14:25
  16:8    16:23    21:5
now [6]    6:15    9:25
  14:23    16:5    19:24
  21:11
Number [2]    5:21
  5:24
O [4]    1:18    1:18
  1:18    3:8
oath [1]  4:3
object [4]    9:6
  17:6    17:7    17:8
objection [4]    7:18
  7:19    8:17    18:1
offered [3]    8:15
  8:21    8:24
office [4]    5:18
  6:9    7:2    10:19
officer [1]    15:10
  16:7
officers [1]    10:9
Offices [2]    2:13
  21:14
one [8]    4:14    14:12

14:18    14:19    14:21
  18:9    18:20    19:3
Operations [9]    6:17
  7:6    7:10    8:6
  9:3    9:18    9:22
  18:3    18:10
opposed [1]    7:23
oral [1]    2:17
order [1] 11:19
otherwise [2]    5:14
  18:4
outcome [1]    21:17
outside [1]    17:12
P [2]    1:18    3:8
P.O [1]    1:20
PAGE [1]    3:11
paid [2]    12:23    13:11
part [6]    2:19    6:15
  6:18    12:23    13:25
  16:15
part-time [12]    15:11
  15:15    15:17    15:19
  15:20    15:22    16:2
  16:7    16:16    16:17
  16:23    19:23
parties [2]    2:8
  21:17
passed [2]    6:25
  7:1
patrol [5]    13:14
  13:16    14:2    14:3
  14:6
Paul [2]  10:18    11:15
pay [1]    11:19
paying [1]    19:25
people [3]    14:18
  14:19
perform [2]    11:19
  11:20
performed [4]    10:13
  11:11    11:21    18:17
performing [1]    10:23
person [6]    9:21
  16:22    17:14    17:23
  19:3    19:25
personnel [1]    14:23
persons [1]    17:23
place [1] 6:7
Plaintiff [2]    1:4
  3:3
point [2] 5:22    18:23
politic [1]    1:5
position [25]    7:6
  7:21    8:6    8:11
  8:16    8:22    8:25
  9:3    9:9    9:11
  9:12    9:17    10:4
  10:5    10:10    11:3
  13:12    14:16    14:20
  14:21    15:13    17:2
  17:11    18:3    19:12
possible [1]    17:21
power [1]    19:3
powers [1]    14:6
prejudice [1]    4:23

present [1]    7:3
pretty [1]    5:1
previously [3]    10:12
  11:10    18:16
procedure [1]    21:2
proceedings [3] 5:25
  18:23    18:25
process [1]    5:12
promoted [3]    14:12
  14:18    14:18
promotion [2]    14:11
  14:17
proof [1]    2:22
propounded [1] 21:7
provided [1]    6:2
provisions [2]    2:11
Public [2]    2:16
  21:3
purpose [3]    2:20
purposes [3]    2:10
  2:19    5:23
pursuant [1]    2:11
questions [3]    20:1
  20:3    21:7
quick [1]    4:7
quit [1]  12:5
R [4]    1:18    1:18
  1:18    1:18
raised [1]    4:20
ranks [1]    14:3
re-establishment [1]
  9:12
read [2]  18:19    18:24
record [4]    4:7
  7:19    10:1    17:11
recreated [1]    9:18
reduced [1]    21:8
regarding [1]    21:5
regardless [1]    18:17
regular [1]    6:23
  7:24
reinstated [3]    9:12
  9:18    17:11
related [1]    21:17
relevance [1]    18:5
relevant [1]    17:13
  18:7
remained [1]    10:9
rendered [1]    2:21
rephrase [1]    17:15
replace [4]    13:15
  14:13    17:24    19:5
replaced [6]    9:22
  17:5    17:9    17:14
  18:10    18:14
replacing [1]    18:2
Reporter [6]    2:16
  2:25    5:22    18:24
  21:3    21:24
REPORTER'S [1]
  21:1
REPORTERS [1]
  1:19

**D. Mahon**                                        CondenseIt™                                    Representing - year

**Representing** [2]
3:3      3:7
**respective** [1]    2:9
**Respondents** [2]
1:11      4:14
**responsibility** [3]
14:2      14:7    14:17
**result** [1]        8:5
**resulting** [1]     4:23
**retired** [1]       12:6
**returned** [1]      21:12
**right** [3] 5:2     9:1
19:18
**road** [1]  15:6
**ROB** [1] 1:9
**roster** [1]        19:24
**Royster** [1]       3:7
**Rule** [1] 2:22
**Rules** [1]         2:12
**salary** [3]        12:23
13:5     13:10
**scope** [1]         4:19
**seal** [1]  21:20
**seed** [2]   6:17   14:15
**semantics** [1]     7:25
**sense** [1]         19:6
**sergeant** [16]     6:17
7:6      7:10    8:6
8:10     9:3     9:18
9:22     10:20   10:23
11:10    12:1    14:16
18:3     18:10   19:14
**several** [1]       8:12
**sheriff** [6]       4:15
5:8      5:11    6:1
10:22    12:1
**sheriff's** [21]    6:10
6:11     7:2     7:16
8:8      8:16    8:22
8:25     10:15   11:9
11:18    11:24   11:25
12:11    13:3    13:6
15:5     15:23   16:9
17:3     17:24
**Shorthand** [6]     1:19
2:16     2:25    21:1
21:2     21:24
**signature** [1]     20:3
**significance** [1]
10:11
**significant** [2]   7:25
8:2
**simple** [1]        17:17
**SIMPSON** [1]       1:10
**small** [1]         13:4
**someone** [2]       14:8
19:11
**sorry** [2] 4:9     6:4
**South** [3]         2:13
3:5      21:14
**Southeastern** [1]
13:8
**specifically** [1] 4:22
**split** [1] 8:1

**started** [1]       6:24
**State** [3] 1:2     5:6
21:3
**statement** [1]     4:7
**states** [1]        6:15
**Statute** [1]       2:21
**stenographic** [1]
21:7
**still** [2]  10:6   12:20
**STIPULATED** [1]
2:7
**STIPULATION** [1]
2:1
**Street** [1]        2:13
**subsequently** [1]
8:21
**such** [1]  2:21
**suit** [1]  2:8
**supervision** [1] 21:9
**supervisory** [4] 14:2
14:4     14:7    14:9
**supplements** [1]
13:5
**Supreme** [1]       2:12
**swore** [1]         21:4
**sworn** [1]         4:2
**T** [2]     1:18    1:18
**task** [5]  12:11   12:16
12:20    12:25   13:9
13:13
**terminate** [1]     7:15
**terminating** [1] 7:23
**terms** [1]         18:15
**testified** [1]     4:3
**testify** [1]       21:4
**testimony** [2]     7:20
21:11
**Thad** [26]         1:3
6:3      6:8     7:15
8:7      8:15    9:22
10:13    11:21   14:25
16:8     16:23   17:1
17:4     17:9    17:12
17:14    17:24   18:14
18:16
**thank** [6]         5:17
9:16     12:9    15:15
16:21    17:18
**therefore** [2]     7:22
9:13
**thereof** [2]       2:19
21:18
**thereto** [1]       21:8
**THOELE** [1]        1:10
**thought** [1]       18:21
**through** [5]       2:8
5:12     13:9    18:11
19:20
**times** [1]         8:12
**title** [1]  18:17
**today** [3]         4:13
18:6     20:4
**too** [1]   17:20
**took** [4]  10:19   14:16

14:16    19:22
**touching** [1]      21:5
**tried** [1] 17:10
**true** [3]  8:5     17:1
21:11
**truth** [3] 21:4    21:5
21:5
**try** [1]   17:16
**trying** [1]        8:1
**two** [2]   14:18   14:19
**typewritten** [1]  21:8
**U** [1]     1:18
**under** [2]         21:8
21:20
**understand** [2] 5:13
17:21
**understood** [1] 5:15
**untimely** [1]      4:24
**Urbana** [1]        3:9
**used** [1]  8:12
**usually** [1]       16:14
**vacant** [1]        14:22
**vague** [2]         8:17
10:6
**Voelker** [1]       3:7
**volley** [1]        17:7
**wage** [1] 12:23
**waive** [1]         20:3
**whole** [1]         21:4
**withdraw** [1]      9:14
**within** [1]        14:2
**without** [1]       2:22
**witness** [2]       4:2
21:8
**word** [1] 8:12
**works** [1]         13:7
**wrong** [2]         4:11
11:6
**year** [3]  12:19   13:10
14:22

# OFFICE OF SHERIFF, EFFINGHAM COUNTY

**OFFICE ADDRESS:**
**101 N. FOURTH STREET**
**SUITE 101**
**EFFINGHAM, IL 62401**



**CONTACT INFORMATION:**
**PHONE: (217) 342-2101**
**FAX: (217) 342-2213**
**SHERIFFMAHON@CO.EFFINGHAM.IL.US**

## SHERIFF DAVID J. MAHON
### INTEGRITY • SERVICE • PROFESSIONALISM

December 16, 2014

Operations Sergeant Thad Brockett,

I am writing to inform you that the Effingham County Board has voted to eliminate the funding for Operations Sergeant from the Sheriff's Department Budget.

As a result, your position with the Department will be eliminated and your employment will end on 12/16/14.

We wish you the best of luck with your future endeavors.

/s/ Sheriff David Mahon

Sheriff David J. Mahon



| Exhibit 1 |